## TRIPLETT v ST AMOUR

Docket No. 94059. Argued March 31, 1993 (Calendar No. 4 April).
Decided September 28, 1993.

Patricia L. St. Amour and William St. Amour, her husband,
brought an action in the Cheboygan Circuit Court against
Victor B. Triplett, the driver of an automobile that collided
with Patricia St. Amour's automobile, and Trinity Chemical
Company, the owner of the automobile, seeking damages for an
injury to Patricia's shoulder as a result of the accident. Follow-
ing discovery, the parties settled, and the action was dismissed,
Robert C. Livo, J.

Thereafter, during the course of a second suit brought by
Patricia St. Amour against her no-fault insurer for benefits
arising out of the same accident, it was ascertained that she
had been treated less than thirty days before the accident by a
physician specialist for a serious shoulder injury. The St.
Amours filed a third suit against the doctor for breach of the
physician-patient privilege.

Upon learning of the prior treatment, Triplett, Trinity Chem-
ical, and Federated Mutual Insurance Company, the insurer of
Trinity's vehicle, brought an action in the Kalkaska Circuit
Court against the St. Amours, alleging fraudulent concealment
of Patricia's preaccident condition, and seeking damages arising
out of the execution of the settlement agreement. The court,
William A. Porter, J., granted summary disposition for the
defendants, concluding that an independent action for fraud
could not be maintained because it was barred by the original
action under principles of res judicata or collateral estoppel,
and that the plaintiffs were limited to seeking relief from the
judgment under MCR 2.612(C)(1). The Court of Appeals, Hood,
P.J., and Connor and R. C. Kaufman, JJ., reversed and re-
manded for further proceedings, holding that a judgment en-
tered pursuant to an allegedly fraudulently induced settlement
agreement does not bar a separate action for damages resulting
from the fraud (Docket No. 129864). The parties appeal.

In opinions by Justice Boyle, joined by Justice Mallett, by
Justice Riley, and by Justice Levin, the Supreme Court held:

Because the court rules provide effective remedies and deter-
rents, an independent cause of action at law to recover dam-

ages for a fraudulently induced settlement should not be recognized under the circumstances of this case.

Reversed; judgment of the circuit court reinstated.

Justice BOYLE, joined by Justice MALLETT, stated further that summary disposition was appropriate. The court rules address the balance between deterring fraud, restoring parties to their prefraud positions, and the finality of judgments. Permitting independent actions at law for fraud in inducing settlements would benefit tortfeasors and upset that balance. In addition, it would render inconsequential the period of limitation under the court rules for relief from judgment.

Justice RILEY, concurring in part and dissenting in part, further stated that both plaintiffs and defendants may obtain relief from a fraudulently induced settlement only through MCR 2.612(C).

The court rules and accompanying statutory provisions appropriately balance the competing interests of deterring fraud, vindicating the interests of a defrauded party, and maintaining the finality of judgments, and provide the best-reasoned approach for resolution of this case. The failure of Justice BOYLE to address whether a similarly situated plaintiff may file an independent action at law for damages leaves intact the common-law right recognized in *Kordis v Auto Owners Ins Co,* 311 Mich 247 (1945), and creates an artificial distinction between plaintiffs and defendants in such circumstances. Although *Kordis* may have provided an appropriate remedy in the past, the advent of sanctions and MCR 2.612(C), created specifically to address this issue, obviate any need for a separate action at law for either party.

Justice LEVIN, writing separately, stated that case law provides that an equitable action cannot be maintained to enjoin or set aside a workers' compensation award or judgment on the award on the ground that it was based on the perjury of the person to whom the award was made. The reasoning set forth in the cases is as applicable in an action at law as an action in equity and does not depend on whether the parties in an earlier action decided to settle the controversy. Before changing the rule, the views of counsel who frequently represent parties in personal injury actions should be sought.

Justice GRIFFIN, joined by Chief Justice CAVANAGH and Justice BRICKLEY, dissenting, stated that the plaintiffs are not limited to seeking relief from judgment under MCR 2.612, but alternatively may pursue an action at law for damages based on fraud.

Although MCR 2.612 provides for relief from a judgment

obtained by fraud, nothing in the language of the rule supports
or requires the conclusion that it provides the exclusive remedy
under such circumstances or that it precludes an independent
action at law for fraud. Permitting an independent action is
supported by the case law of Michigan and other jurisdictions.

Whether the plaintiffs suffered any actionable damage as a
result of the defendants' concealment is the proper subject of
this independent action. By interpreting MCR 2.612 in a non-
exclusive manner, the common-law election of remedies doc-
trine expressed in *Kordis v Auto Owners* remains a viable
option for a party allegedly defrauded by an adversary's mis-
conduct. If the plaintiffs offer sufficient evidence of the ele-
ments of fraud, the trier of fact should then determine what
would have been the probable amount of the settlement absent
the fraud, after considering all known or foreseeable facts and
circumstances, and award damages accordingly.

194 Mich App 335; 486 NW2d 146 (1992) reversed.

*Fordney, Cady, Mastromarco & Jahn* (by
*Victor J. Mastromarco, Jr.,* and *Jo Ellen O'Con-
nor*) for the plaintiffs.

*Sumpter, Perry & McDonald, P.C.* (by
*Thomas E. McDonald*), for the defendants.

BOYLE, J. The plaintiffs, composed of the alleged
tortfeasor[1] in a previous action, his employer, and
its insurer, have brought an independent action at
law for fraud seeking money damages issuing from
a fraudulently induced settlement agreement. The
circuit court granted summary disposition for the
defendant, which the Court of Appeals reversed.
We believe the summary disposition was appropri-
ate, and we therefore reverse the judgment of the
Court of Appeals and reinstate the judgment of
the circuit court.

I

Following a two-car collision that occurred in

[1] The term "tortfeasor" is simply used to express the alleged role of
the present plaintiff in the original action. It does not represent a
judgment by this Court that the alleged conduct was actually tortious.

February 1986, Patricia St. Amour, the driver of one automobile, and her husband[2] brought a personal injury action in Cheboygan Circuit Court against the driver of the other automobile, Victor Bruce Triplett, and against his employer, Trinity Chemical Company, which owned the other car. Mrs. St. Amour claimed that as a result of the accident she suffered a traumatic shoulder dislocation. As insurer of the vehicle driven by Triplett, Federated Mutual Insurance Company assumed the defense of that action. Following discovery, which included extensive inquiries concerning Mrs. St. Amour's alleged shoulder injury, the parties entered into a settlement agreement pursuant to which Mrs. St. Amour and her husband were paid $20,000, and an order dismissing the action with prejudice was entered by the circuit court on May 3, 1988.

Thereafter, Mrs. St. Amour brought another action against her own no-fault carrier, State Farm Insurance Company, claiming entitlement to benefits relating to the same automobile accident that it had refused to pay. During the course of that lawsuit, it was ascertained that less than thirty days before the accident involving Triplett, Mrs. St. Amour had been treated by Dr. John M. Thiel, a bone and joint specialist, for a serious injury to her shoulder. The St. Amours then filed a third lawsuit against Dr. Thiel alleging a breach of the physician-patient privilege for disclosing a prior treatment of her shoulder condition.

After learning through that litigation of Dr. Thiel's prior treatment, the present action was filed March 17, 1989, in Kalkaska Circuit Court by Triplett, Trinity Chemical Company, and Federated Mutual Insurance Company, as plaintiffs. They allege that during the course of discovery in

[2] William St. Amour was joined as a plaintiff; however, his claim for loss of consortium was derivative.

the original action, the St. Amours fraudulently concealed Mrs. St. Amour's preaccident physical condition. Plaintiffs allege that defendants made misrepresentations via sworn deposition testimony, sworn answers to interrogatories, and counsel's statements and pleadings signed as the agent of the defendants. In this action, plaintiffs do not request rescission of the settlement agreement or of the order of dismissal entered by the Cheboygan Circuit Court. Rather, the complaint alleges an action at law for fraud and seeks monetary damages resulting from execution of the fraudulently induced settlement agreement, as well as costs associated with defending the original case.

The St. Amours moved for summary disposition pursuant to MCR 2.116(C)(8), contending that plaintiffs had failed to state a claim upon which relief could be granted. They also moved for a change of venue and requested the imposition of sanctions for improper venue.

In an opinion dated April 25, 1990, the Kalkaska Circuit Court granted defendants' motion for summary disposition. Relying on *Rogoski v Muskegon,* 107 Mich App 730; 309 NW2d 718 (1981), it concluded that an independent action at law for fraud could not be maintained because the prior action was a bar under either res judicata or collateral estoppel principles. The court indicated that plaintiffs were limited to seeking relief from judgment in accordance with MCR 2.612(C)(1). The court opined that an action in equity for relief would not be available under MCR 2.612(C)(3) because this case does not involve extrinsic fraud. In view of its grant of defendants' motion for summary disposition, the court declined to rule on

the issue of venue or the request for costs or sanctions under MCR 2.223.[3]

Plaintiffs appealed the order granting summary disposition in favor of defendants, and defendants appealed from the denial of sanctions for improper venue.

The Court of Appeals reversed and remanded for further proceedings. 194 Mich App 335; 486 NW2d 146 (1992). Citing *Courtney v Feldstein,* 147 Mich App 70; 382 NW2d 734 (1985), the Court ruled that a judgment entered pursuant to an allegedly fraudulently induced settlement agreement does not bar a separate action for damages resulting from the fraud. It did not address the issue of venue and declined to award sanctions.

Both sides then applied for leave to appeal in this Court, which we granted. 441 Mich 902 (1992).

II

The narrow issue presented in the instant case is whether this Court should recognize an independent action at law to recover damages for a fraudulently induced judgment when the instant plaintiff was the defendant in the original tort action and the instant defendant was the releasor of the

[3] (A) Motion; Court's Own Initiative. If the venue of a civil action is improper, the court

(1) shall order a change of venue on timely motion of a defendant, or

(2) may order a change of venue on its own initiative with notice to the parties and opportunity for them to be heard on the venue question.

(B) Costs; Fees.

(1) The court shall order the change at the plaintiff's cost, which shall include the statutory filing fee applicable to the court to which the action is transferred, and which may include reasonable compensation for the defendant's expense, including reasonable attorney fees, in attending in the wrong court.

previous tort claim.[4] The instant plaintiffs stress that such an independent action is necessary to restore them to their prefraud position. They also advance the goal of deterring fraud. MCR 2.612(C),[5] the court rule allowing relief from judgment, is, according to the plaintiffs, incapable of accomplishing this end. However, because the balance between the worthwhile goals advanced by the plaintiffs and the equally significant concern for the finality of judgments is appropriately addressed by the court rules, we see no need to adopt the new cause of action requested by the plaintiffs.

Although the plaintiffs have failed to direct the Court to any cases that allows a fraud action

---

[4] We recognize that fraud has long been a cognizable claim in Michigan and at common law. However, the question before us is not whether an action for fraud exists, but whether it exists under these circumstances.

[5]    (C) Grounds for Relief From Judgment.

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

(d) The judgment is void.

(e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

(f) Any other reason justifying relief from the operation of the judgment.

(2) The motion must be made within a reasonable time, and, for the grounds stated in subrules (C)(1)(a), (b), and (c), within one year after the judgment, order, or proceeding was entered or taken. A motion under this subrule does not affect the finality of a judgment or suspend its operation.

(3) This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding; to grant relief to a defendant not actually personally notified as provided in subrule (B); or to set aside a judgment for fraud on the court.

under the present circumstances, and our indepen-
dent research has likewise failed to find cases
directly on point that might offer guidance, it is
not difficult to imagine that under the reasoning of
the plaintiff, it would be a rare case in which a
tortfeasor in the first action, upon finding that the
plaintiff had acted fraudulently during settlement
negotiations, would move to rescind the settlement
under MCR 2.612(C). The tortfeasor would gener-
ally be better off ratifying the settlement and
suing for fraud, thereby guaranteeing that the
maximum exposure of liability would be the
amount previously paid to the plaintiff. Such ac-
tion by the tortfeasor would completely protect it
from a trial in which the jury might award a
judgment considerably larger than the settlement
figure. This protection would also serve to greatly
strengthen the tortfeasor's hand in negotiating a
settlement of the second suit. The predictable
outcome is that the price of final settlement would
be substantially reduced.

The cases involving the releasers of tort claims
in the first action are inapposite. While there
appears to be a national split of authority regard-
ing whether a "releasor of a tort claim may stand
upon a fraudulently induced release and maintain
a separate fraud action," *DiSabatino v United
States Fidelity & Guaranty Co,* 635 F Supp 350,
352 (D Del, 1986); see also *Kordis v Auto Owners
Ins Co,* 311 Mich 247; 18 NW2d 811 (1945),[6] or is
limited to rescinding the settlement agreement
and pursuing the original suit, *Shallenberger v
Motorists Mutual Ins Co,* 5 Ohio Op 2d 173; 150
NE2d 295 (1958), neither the cases from foreign
jurisdictions nor Michigan precedent supports
what the plaintiff asks this Court to today recog-

---

[6] The parties have not cited *Kordis* and we have no occasion to
speak to the question of its continued validity.

nize—the ability of the tortfeasor in the original action to stand upon the plaintiff's release and sue for fraud. The public policy justifications for recognizing a fraud suit in the above circumstances are not present here.

The balanced approach that MCR 2.612(C) represents to remedy fraudulently induced judgments would be upset if the plaintiff's fraud action was recognized in Michigan. Likewise, the attempt represented by MCR 2.612(C)(2) to enforce the finality of judgments by imposing a one-year period of limitation on the legal remedies available under the rule could also become inconsequential. The plaintiff asserts that such a drastic practical effect is necessary to vindicate the interests of the defrauded party. However, under these circumstances, MCR 2.302(G)(3)(a), (4) provides a remedy to the defrauded tortfeasor that makes him whole without recognizing a new and unique tort action.[7]

Under MCR 2.309(B)(1), (3), a party must sign an interrogatory certifying an answer, which "must include such information as is available to the party served . . . ." MCR 2.302(G)(3)(a), (4) provides sanctions in the discovery context when a certification is not "consistent with these rules . . . ." If it were shown that Mrs. St. Amour fraudulently failed to list a doctor and the trial court granted the defendant in the original action relief under MCR 2.612, the trial court would be empowered to "impose . . . an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred be-

[7] This Court's recent decision in *Bechtold v Morris,* 443 Mich 105; 503 NW2d 654 (1993), allows a trial court to assess sanctions for an improperly signed paper even if it is not a pleading. While in this case discovery sanctions would effectively deal with Mrs. St. Amour's conduct, if it is shown to be fraudulent, the sanctions available under MCR 2.114(D), (E) could serve as a remedy to (first-action) defendants in other situations.

cause of the violation, including reasonable attorney fees." MCR 2.302(F)(4). Such a sanction would effectively "vindicate the interests of the defrauded party," *post* at 207, which in the case of the defendant in the original tort action, consist primarily of costs and attorney fees. This remedy provides neither party with a windfall and encourages the use of the court rules rather than the establishment of new tort actions.

Because the court rules provide effective remedies and deterrents in the present case, we decline to recognize a new cause of action for fraud under these circumstances.[8]

MALLETT, J., concurred with BOYLE, J.

RILEY, J. (*concurring in part and dissenting in part*). Justice BOYLE holds that a defendant who becomes the party to a settlement may not bring an action at law for damages alleging that the settlement was fraudulently induced and that the defendant may only obtain relief through MCR 2.612(C). Justice BOYLE, however, fails to address whether a similarly situated plaintiff is also limited to the same remedy, thereby leaving intact the common-law right of a plaintiff to obtain relief from a settlement allegedly induced by fraud through an independent action at law. Because I would find that a party may only obtain relief from a fraudulently induced settlement through MCR 2.612(C),[1] I write separately.

---

[8] Because the trial court had the power to grant summary disposition regardless of the venue, MCL 600.1645; MSA 27A.1645, the venue issue is moot because the trial court's action precluded the requested change.

[1] MCR 2.612(C) provides:

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

Not unlike Justice BOYLE, I find that the entirety of the court rules and accompanying statutory provisions appropriately balance the competing interests of deterring fraud, vindicating the interests of a defrauded party, and maintaining the finality of judgments. MCR 2.612(C) provides a balanced method of revoking a judgment induced by fraud, while also allowing for the finality of judgments after the passage of a reasonable time. MCR 2.625(A)(2) and MCL 600.2591; MSA 27A.2591 deter fraudulent actions by mandating that a court sanction a party that files a frivolous motion. Likewise, MCR 2.114(C) requires an attorney to sign each pleading and certify that "to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the pleading is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," MCR 2.114(D)(2), and that it was not filed for the purpose of harassment or delay. MCR 2.114(E) mandates that attorneys and parties may be sanctioned if they violate the certification requirement. Similarly, MCR 2.309(B)(1), (3) require that all parties certify that their answers to interrogatories provide "such information as is available to

* * *

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

* * *

(2) The motion must be made within a reasonable time, and, for the grounds stated in subrule[ ] [(C)(1)(c)], within one year after the judgment, order, or proceeding was entered or taken. A motion under this subrule does not affect the finality of a judgment or suspend its operation.

(3) This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding; to grant relief to a defendant not actually personally notified as provided in subrule (B); or to set aside a judgment for fraud on the court.

the party served," while MCR 2.302(G)(3)(a), (4) provide sanctions. Because sanctions include "the costs and fees against the nonprevailing party and their attorney," MCL 600.2591(1); MSA 27A.2591(1),[2] the remedies provided by statute and court rule effectively "vindicate the interests of the defrauded party"[3] by ensuring that the original settlement is rescinded, while compensating the defrauded party for its legal costs. This is especially true because sanctions are mandatory. MCL 600.2591(1); MSA 27A.2591(1) ("if a court finds that a civil action or defense to a civil action was frivolous, the court . . . shall award to the prevailing party the costs and fees incurred by that party").[4]

Furthermore, Justice BOYLE also correctly notes that "it would be a rare case in which a tortfeasor in the first action, upon finding that the plaintiff had acted fraudulently during settlement negotiations, would move to rescind the settlement under

[2] The sanctions for frivolous discovery motions, MCR 2.302(G)(4), and pleadings are identical. MCR 2.114(E).

[3] Post at 207.

[4] Furthermore, the Michigan Rules of Professional Conduct obligate an attorney to practice by only the highest ethical standards. Thus, an attorney is prohibited from filing frivolous actions or motions, MRPC 3.1; knowingly making false statements of material facts to assist a client in a criminal or fraudulent act and knowingly omitting disclosure of a material fact which is necessary to prevent assistance to a client in a criminal or fraudulent act; MRPC 3.3, and knowingly making a false statement of material fact to a third person during the representation of a client. MRPC 4.1. In fact, an attorney may not engage in any conduct "involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer [or] prejudicial to the administration of justice . . . ." MRPC 8.4. A violation of the standards of professional conduct may lead to disciplinary action by the Attorney Grievance Commission, which may include admonishment, suspension from practice, as well as disbarment. Although rules of ethical conduct existed at the time of this Court's decision in *Kordis v Auto Owners Ins Co*, 311 Mich 247; 18 NW2d 811 (1945), their combination with the more recent sanctions authorized by court rule and statute vindicate the interests of a defrauded party.

MCR 2.612(C)." *Ante* at 177. This is so because a defendant alleging fraud would not be forced to rescind the settlement while suing for damages arising from fraud, while the court rule requires the parties to return to a clean slate. In other words, the court rule will become obsolete because there exists no advantageous reason to utilize it.

Justice Boyle's rationale, however, applies with equal vigor to plaintiffs. A sophisticated plaintiff will also file a suit for damages in similar circumstances. Indeed, the bulk of authority on the issue involves an original plaintiff filing suit against a defendant whom the plaintiff claims defrauded him during the settlement process. Yet, Justice Boyle fails to address the issue whether a plaintiff, under similar circumstances as defendant in the instant case, may file an independent action at law for damages. As noted by the majority, however, in *Kordis v Auto Owners Ins Co,* 311 Mich 247; 18 NW2d 811 (1945), this Court held that plaintiffs may file such an action. Hence, *Kordis* is still viable precedent, and Michigan law now differentiates between plaintiffs and defendants in similar circumstances: plaintiffs may file an independent action at law for the fraudulent inducement of a settlement while defendants may not. I, like Justice Griffin, find that the "proposed distinction between fraud committed by a plaintiff and fraud committed by a defendant in an underlying tort action is an artificial one." *Post* at 207. The decision in this case should not hinge upon which party is pursuing the fraud claim. No authority exists for such a distinction.[5]

[5] Furthermore, the anomaly created by the inconsistent rulings of *Kordis* and Justice Boyle may violate the Equal Protection Clauses of both the United States and Michigan Constitutions. US Const, Am XIV, § 1 ("nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws"); Const 1963, art 1, § 2 ("[n]o person shall be denied equal protection of the laws").

While the authorities cited by Justice BOYLE and Justice GRIFFIN are extensive, none wrestles with the lack of necessity for a separate common-law action because of the introduction of new court rules and statutes that address the issue. Thus, continued adherence to *Kordis* is misguided. *Kordis* is the only significant Michigan authority that permits an action at law for the fraudulent inducement of a settlement. Although *Kordis* may have been an appropriate common-law remedy in decades past, the more recent advent of sanctions and MCR 2.612(C), created specifically to address this issue, obviate any need for a separate action at law for either party.[6] Thus, MCR 2.612(C), combined with sanctions authorized by statute and the court rules, provides the best-reasoned approach for resolution of the issue in the instant case.

LEVIN, J. (*separate opinion*). The question presented is whether a judgment entered pursuant to a settlement of a personal injury claim precludes an action for damages asserting that one of the defendants, in the action settled, committed perjury when she failed to mention that, less than thirty days before the accident that gave rise to the earlier action, she was treated by a physician for an injury that preceded the accident.

The circuit court dismissed, stating that the complaint did not state a cause of action because it alleged "intrinsic fraud." The Court of Appeals reversed.[1]

I join in reversal of the decision of the Court of

[6] Similarly, Justice GRIFFIN's reliance upon *DiSabatino v United States Fidelity & Guaranty Co*, 635 F Supp 350 (D Del, 1986), is also unwarranted. As a federal district court decision, *DiSabatino* is not binding on this Court; nor is it persuasive. The decision does not envision the Michigan framework of statutes and court rules carefully crafted in the instant case.

[1] 194 Mich App 335; 486 NW2d 146 (1992).

Appeals on the authority of *Columbia Casualty Co v Klettke,* 259 Mich 564; 244 NW 164 (1932), and *Fawcett v Atherton,* 298 Mich 362; 299 NW 108 (1941).

In *Columbia Casualty* and *Fawcett,* this Court held that an equitable action cannot be maintained to enjoin or set aside a workers' compensation award, or a judgment thereon, on the ground that the award was based on the perjury of the person to whom the award was made.

In *Columbia Casualty,* this Court said:

> Perjury is not uncommon in courts. In almost every case there are disputed facts. Courts, juries, and administrative tribunals are constantly called upon to weigh testimony, pass upon the credibility of witnesses, and determine, in legal controversies, who has told the truth. [*Id.* at 565.]

The Court continued that although the authorities were not in full agreement, "this State is committed to the rule" stated in Pomeroy's treatises[2] that such an action cannot be maintained, and quoted the following therefrom:

> "The courts hold that perjury is intrinsic fraud and that therefore it is not ground for equitable relief against a judgment resulting from it. We have seen that the fraud which warrants equity in interfering with such a solemn thing as a judgment must be fraud in obtaining the judgment, and must be such as prevents the losing party from having an adversary trial of the issue. Perjury is a fraud in obtaining the judgment, but it does not prevent an adversary trial. The losing party is before the court and is well able to make his defense. His opponent does nothing to prevent

---

[2] Pomeroy's Equitable Remedies (2d ed), § 656, published as Pomeroy's Equity Jurisprudence (4th ed), § 2077 . . . . [*Id.* at 565.]

it. This rule seems harsh, for often a party will lose valuable rights because of the perjury of his adversary. However, public policy seems to demand that there be an end to litigation. If perjury were accepted as a ground for relief, litigation might be endless; the same issues would have to be tried repeatedly. As stated in a leading case, 'the wrong, in such case, is of course a most grievous one, and no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied. Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is, that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony; for if this could be done once, it could be done again and again *ad infinitum.*' And to use the language of an eminent court, 'the maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence and cannot be contradicted.'

"In accordance with the principles laid down above, it is held, by the weight of authority, that neither perjury nor forgery is sufficient ground for equitable interference." [*Id.* at 565-567.]

The Court continued that the principle set forth in Pomeroy had been approved by this Court in earlier cases.[3]

In *Fawcett,* the Court quoted at length from *Columbia Casualty,* and stated that the rule there stated was in harmony with a decision of the

[3] The Court cited *Gray v Barton,* 62 Mich 186; 28 NW 813 (1886); *Codde v Mahiat,* 109 Mich 186; 66 NW 1093 (1896); *Steele v Culver,* 157 Mich 344; 122 NW 95 (1909).

United States Supreme Court,[4] and is the rule followed in a majority of the states and England.[5] The Court said that it was mindful of the "criticisms that have been directed at the harshness of this rule and the reasons advanced in its support," but concluded that "[o]n the record in the case at bar we are not disposed to deviate from the rule long established in Michigan as stated in *Columbia Casualty Co v Klettke, supra.*" *Id.* at 366-367.

*Columbia Casualty* and *Fawcett* might be distinguished on the ground that the actions there sounded in equity and the action here is in law, or on the ground that in those cases the awards were entered following an adjudication of the disputed factual issues, while here the judgment was entered pursuant to a settlement. The reasoning set forth in *Columbia Casualty* and *Fawcett,* however, is as applicable in an action at law as an action in equity, and does not depend on whether the parties in the earlier action decided to settle the controversy.

This is not a case in which the plaintiff was persuaded to settle a substantial claim because of misrepresentation by an insurer or its representative concerning policy limits.[6] Nor is this a case in which a spouse concealed assets before entering into a separation agreement.[7] Different policy considerations might, depending on all the circumstances, justify a different rule in such cases.

Before changing the rule set forth in *Columbia Casualty* and *Fawcett,* we should seek the views of lawyers who frequently represent plaintiffs and

---

[4] *United States v Throckmorton,* 98 US 61, 68; 25 L Ed 93 (1878).

[5] The Court cited anno: *Perjury as ground of attack on judgment or order of court,* 126 ALR 390, 392.

[6] Such cases are discussed in the lead and dissenting opinions.

[7] See *Courtney v Feldstein,* 147 Mich App 70; 382 NW2d 734 (1985), relied on by the Court of Appeals in the instant case.

who frequently represent defendants in personal injury actions. They might agree with the view expressed, in one of the cases quoted by Pomeroy, that although the wrong is "a most grievous one," and the courts would be happy to provide a remedy, they have been stymied from doing so by inability to devise a rule "that would remedy the evil without producing mischiefs far worse than the evil to be remedied."[8]

GRIFFIN, J. We respectfully dissent. In deciding whether a judgment entered in accordance with the settlement of a personal injury claim bars an independent action for damages based on fraud in the execution of the settlement agreement, we would hold, under the circumstances presented here, that plaintiffs are not limited to the remedy of seeking relief from judgment under MCR 2.612. Plaintiffs may alternatively pursue an action at law for damages. In so holding, we would affirm the decision of the Court of Appeals.

I

In pertinent part, MCR 2.612(C) provides:

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

---

[8] Because this action does not seek relief from judgment pursuant to MCR 2.612(C)(1)(c), there is no need to consider to what extent the rule stated in *Columbia Casualty* and *Fawcett* has been superseded by MCR 2.612(C)(1)(c), providing that where the action is commenced within one year the court may relieve a party from a final judgment on the ground of "[f]raud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."

MCR 2.612(C)(3) provides that a court may entertain an independent action to relieve a party from a judgment, to grant relief to a defendant not actually personally notified, or to set aside a judgment "for fraud on the court."

(a) Mistake, inadvertence, surprise, or excusable neglect.

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

* * *

(f) Any other reason justifying relief from the operation of the judgment.

(2) The motion must be made within a reasonable time, and, for the grounds stated in subrules (C)(1)(a), (b), and (c), within one year after the judgment, order, or proceeding was entered or taken. A motion under this subrule does not affect the finality of a judgment or suspend its operation.

(3) This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding; to grant relief to a defendant not actually personally notified as provided in subrule (B); or to set aside a judgment for fraud on the court.

In this case, plaintiffs insist that they do not seek "relief" from judgment pursuant to MCR 2.612. Instead, they maintain that they have filed an independent action at law for fraud, seeking damages flowing from the execution of the settlement agreement.

On the other hand, defendants argue that MCR 2.612 provides the exclusive remedy in this case. They maintain that plaintiffs could have obtained all the relief they are seeking by means of a motion for relief from judgment pursuant to MCR 2.612(C)(1)(c). To obtain this relief, however, plaintiffs would have been required to file a motion in the Cheboygan Circuit Court within the one-year time limitation set forth in subrule (2) relating to the original action, not a separate lawsuit. Defendants contend that because plaintiffs did not avail

themselves of this remedy, an independent equitable action, pursuant to MCR 2.612(C)(3), is foreclosed. Defendants further maintain that an independent action, equitable or legal, should be disallowed upon the basis of the reasoning of the Court of Appeals in *Rogoski v Muskegon,* 107 Mich App 730; 309 NW2d 718 (1981).

In *Rogoski,* the plaintiff filed a complaint alleging that the defendants had given perjured testimony in a prior judicial proceeding and seeking monetary damages. The trial court dismissed the suit, holding that, if it were characterized as an independent action for damages, it would fail to state a cause of action and, if the suit were characterized as an equitable action to set aside the previous judgment, it would fail because it was untimely and the plaintiff had not exhausted her legal remedies. The Court of Appeals affirmed the decision of the trial court, and stated:

> Plaintiff cites us no cases indicating that the substantive law of Michigan has ever allowed an independent action for damages on facts like those presented in the case at bar, and our research uncovers none.
>
> Assuming, arguendo, that the rule allows an independent cause of action for damages in an appropriate case, we would still hold that plaintiff has failed to state a claim upon which relief can be granted. GCR 1963, 117.2(1). Whether a civil action can be brought to secure damages for a conspiracy to commit perjury is an issue of first impression within this state, but we believe the general rule stated in 60 Am Jur 2d, Perjury, § 75, pp 1012-1013, is also the law of Michigan:
>
> "It is the general rule that no civil action for damages lies for false testimony, or for subornation of false testimony. Thus, it has been held that false testimony in a criminal action that results in a conviction of the plaintiff does not furnish the

basis of a civil suit to recover damages, and that no action for damages lies for false testimony in a civil suit whereby the plaintiff fails to recover a judgment, or a judgment is rendered against him . . . [a]nd it has been held that if the parties to an action for giving false testimony are the same as those to the action in which the testimony was given, there can be no recovery; in such an action, estoppel by judgment would appear to be a complete defense. Otherwise, it is said, there would be no end of litigation." [*Rogoski, supra,* p 735.]

The *Rogoski* Court reasoned that even if the plaintiff's suit were construed as one seeking relief from the earlier judgment, the result would be no different:

The portion of GCR 1963, 528.3 which plaintiff's action proceeds under only entitles a litigant to relief from a judgment procured by extrinsic fraud. Extrinsic fraud is a fraud which actually prevents the losing party from having an adversary trial on a significant issue. *Fawcett v Atherton,* 298 Mich 362, 365; 299 NW 108 (1941). Perjury has been held to be an intrinsic fraud only. *Atherton, supra, Beatty v Brooking,* 9 Mich App 579, 584; 157 NW2d 793 (1968), *Kita* [*v Matuszak,* 55 Mich App 288; 222 NW2d 216 (1974)]. In *Atherton,* the Supreme Court explained that, while perjury constitutes a fraud in obtaining a judgment, it does not prevent an adversary trial. The litigant confronted with perjury in court has the opportunity to rebut the perjured testimony through his own case. As *Atherton* states, while the rule may seem harsh in individual cases, litigation must have some finality and, if allegedly perjured testimony could serve as the basis for a new action to set aside a judgment, litigation of a dispute could go on ad infinitum.

This does not mean that a litigant is never entitled to relief from a judgment obtained by

intrinsic fraud. However, this relief cannot be by independent action but, rather, must be by motion in the case in which the adverse judgment was rendered. GCR 1963, 528.3(3), which provides for relief from judgment for an intrinsic fraud, is limited by later provisions of the rule to cases where the party seeking relief brings a motion within a reasonable time not to exceed one year after the judgment is taken. [*Id.*, pp 736-738.]

However, the Court of Appeals in the instant case relied upon another decision, *Courtney v Feldstein,* 147 Mich App 70; 382 NW2d 734 (1985), to reach a different result. In *Courtney,* the plaintiff filed a separate action for fraud against her former husband, alleging that he induced her to enter into an unfavorable property settlement by fraudulently concealing the value of his interests in two corporations during a divorce action. The holding in *Rogoski,* was distinguished by the majority in *Courtney, supra,* pp 74-75,[1] which stated:

> Plaintiff may maintain an independent claim for damages resulting from defendant's alleged fraudulent conduct. To hold otherwise is contrary to the general rule that the principles of res judicata may not be invoked to sustain fraud. As stated in 37 Am Jur 2d, Fraud and Deceit, § 488, p 676:
> "It has been held that a judgment or decree entered in accordance with the settlement of a

[1] The Court explained:

Defendant's reliance on *Rogoski v Muskegon,* 107 Mich App 730; 309 NW2d 718 (1981), is misplaced. In *Rogoski,* this Court noted that there were no previous Michigan cases which allowed an independent action for fraud which occurred during a prior lawsuit. The Court then assumed for the sake of argument that the plaintiff could bring such an action, but found that she had no claim for damages for the defendant's alleged conspiracy to commit perjury. 107 Mich App 735-736. The Court in *Rogoski* therefore did not hold that actions to recover damages for fraud are not permitted. [*Id.,* p 74.]

claim does not bar an action for damages resulting
from fraud where the wrongdoer fraudulently con-
ceals his wrong from the injured person, who
agrees, in ignorance of the wrong, to the settle-
ment and entry of the judgment or decree.[16]"

"[16] *Ross v Preston,* 292 NY 433; 55 NE2d 490 (1944) (the
court saying that in such a case the entry of a judgment is
merely an incident of the fraud which has been perpetrated
outside the action, and the reason that the judgment settling
the claim does not preclude proof of the antecedent fraud is
that the trial and judgment are only a step in the consumma-
tion of the antecedent fraud), reh den 293 NY 664; 56 NE2d
258 (1944); *Gould v Cayuga Co Bank,* 99 NY 333; 2 NE 16
(1885); *Verplanck v VanBuren,* 76 NY 247 (1879)."

The fact that Mr. Courtney, the defendant in the
fraud action, also was the defendant in the divorce
proceedings, did not bar a civil action for damages
for the alleged fraudulent conduct that partly
occurred during the divorce proceedings:

Michigan follows a broad rule of res judicata
which bars not only claims actually litigated in
the prior action, but every claim arising out of the
same transaction which the parties, exercising
reasonable diligence, could have raised but did not.
[Citations omitted.] In order for actionable fraud to
exist, the plaintiff must have suffered damage.
*Mazzola v Vineyard Homes, Inc,* 54 Mich App 608;
221 NW2d 406 (1974). In the instant case, plaintiff
did not suffer damage until the unfavorable prop-
erty settlement was incorporated in the judgment
of divorce. Plaintiff therefore did not have a claim
of fraud against defendant while the divorce pro-
ceedings were pending. While the value of defen-
dant's interest in the two corporations was an
issue in the divorce proceedings, the plaintiff has a
separate and independent claim of fraud which
could not have been raised during the divorce

proceedings since it did not accrue until the judgment of divorce was entered. [*Id.,* pp 75-76.][2]

We agree with the *Courtney* panel that the *Rogoski* decision did not address the issue presented here: whether an action at law to recover damages for a fraudulently induced judgment should be recognized. However, we also note that the discussion contained in *Courtney* barely touches on some of the complex and competing concerns that must be confronted. For instance, it has long been recognized that an action at law will lie to recover damages for fraud. *Schaffer v Jefferson Ave E Corp,* 267 Mich 437, 448; 255 NW 324 (1934); *Spanos v Edwards,* 249 Mich 400, 402; 228 NW 765 (1930). This principle should serve as the starting point for this analysis, and its interplay with the more recent court rule, the election of remedies doctrine, and policy considerations must be fully weighed and considered. For further guidance, we first turn to an examination of cases from other jurisdictions that have addressed this unusual issue.

II

A split of authority exists in other jurisdictions

[2] The *Courtney* majority found the facts before it to be indistinguishable from *Gorman v Soble,* 120 Mich App 831; 328 NW2d 119 (1982), in which the Court implicitly recognized a claim for damages based on fraudulent inducement to enter a consent judgment. However, we agree with the assessment of the dissenting judge in *Courtney:*

> [*Gorman*] is distinguishable. A close examination of the *Gorman* opinion reveals that plaintiff in that case sought to recover damages from his codefendant in a prior action for fraudulently inducing him to settle. 120 Mich App 836-837. In contrast, *Rogoski* and this case involve actions against the opposing party in prior actions. *Gorman* contains no discussion of the problems explained in *Rogoski* or presented here. [*Id.,* p 77 (opinion of C. M. FORSTER, J.).]

regarding whether a party who has settled a negligence suit for personal injuries may institute an independent cause of action for damages arising out of alleged fraud in the execution of the settlement agreement.

*Shallenberger v Motorists Mutual Ins Co,* 5 Ohio Op 2d 173; 150 NE2d 295 (1958), is representative of several cases that have refused to allow a party to pursue an independent action in fraud for damages. *Shallenberger* involved an action at law to recover damages from the defendant insurance company alleged to have resulted from fraudulent representations by the defendant that induced the plaintiff to release a claim. The released claim was for personal injuries to the plaintiff proximately caused by the negligence of a person insured by the defendant. The *Shallenberger* court based its preclusion of an action at law on the following theory:

> The opinions which give any reason for recognizing such an action treat it like an action for deceit where a sale or purchase of personal or real property or a contract therefor has been induced by fraud . . . .
>
> There is usually no analogy between the situation of one induced by fraud to release a tort claim and one induced by fraud to buy something. . . . [W]here there has been a sale of something, possession of that something has usually been relinquished by the seller. Even where use of the sold something has not made it less valuable, the seller will usually want money for it as he did when he made the sale. If he takes it back, he has to sell it to get that money. Each change of possession of that something will ordinarily involve expense or inconvenience. On the other hand, the releasor has nothing to repossess on rescission of the release; and such rescission revests him with the same claim for money that he had before, not something

he must resell to get that money. In reality, the
releasor does not sell anything even of an intangi-
ble nature. In effect, the releasor has merely
agreed for a consideration not to enforce his tort
claim. [*Shallenberger, supra,* pp 177-178.]

The *Shallenberger* court also reasoned that the
ascertainment of damages in an independent cause
of action for fraud, requiring a determination of
the fair value of the disputed claim as the subject
of a reasonable and just compromise, would call
for the exercise of special knowledge and experi-
ence that is far beyond the comprehension of
laypersons. *Id.,* p 179.

Tribunals in several other states have utilized a
similar rationale in prohibiting independent ac-
tions at law for fraud arising out of the settlement
of a tort claim. See, e.g., *Mackley v Allstate Ins
Co,* 564 SW2d 634 (Mo App, 1978);[3] *Davis v Har-
gett,* 244 NC 157; 92 SE2d 782 (1956). See also
*Taylor v Federal Kemper Ins Co,* 534 F Supp 196
(WD Ark, 1982).

By contrast, other courts have allowed a party
to pursue an independent action at law for dam-
ages arising out of a fraudulently induced tort
settlement. Their decisions have as their genesis
the principle that a release or settlement is a
species of contract, and they follow a line of early
New York cases that hold that a party who has
been fraudulently induced to enter into a commer-
cial contract has an election of remedies because a
fraudulently induced contract is voidable. These
cases stand for the proposition that where a com-

---

[3] The *Mackley* court opined,

[T]he measure of damages, if any, in the action for fraud and
deceit is inextricably bound with the question of liability and
the nature and extent of the injuries involved in the underlying
tort claim which was settled. [*Id.,* p 636.]

plaint alleges fraud and deceit in the procurement of a contract, the plaintiff has two remedies: he may stand upon the contract and sue for damages growing out of the fraud, or he may elect to rescind and sue on the original contract. See, e.g., *Verplanck v VanBuren, supra; Gould v Cayuga Co Nat'l Bank, supra.*[4] Cf. *Ross v Preston, supra; Masella v Leemilt's Flatbush Ave,* 112 AD2d 1027; 493 NYS2d 24 (1985).

The election of remedies principle expressed in these commercial contract cases was subsequently expanded to allow the releasor of a tort claim to maintain a separate fraud action. In *Slotkin v Citizens Casualty Co of New York,* 614 F2d 301 (CA 2, 1979), cert den 449 US 981 (1980), the representative of the defendants in an infant's medical malpractice suit misrepresented the amounts of insurance coverage applicable to the action. A stipulation settling the suit was entered into after the plaintiffs' evidence had been adduced at trial but before the plaintiffs learned of the true

---

[4] The *Gould* court stated,

> [W]e . . . turn to . . . the argument, that the action is an attempt to recover under the mask of damages the extinguished balance of the original obligation. . . . There having been no rescission of the compromise argument [sic, agreement], that must stand, and it discharges forever the original contract and extinguishes all right to any balance due upon it. In no form of action while the compromise stands can that balance be recovered. But because of that fact it does not follow that merely nominal damages resulted from the fraud . . . . Such damages will compensate the fraud as make the compromise, which is to stand, an honest and fair one, instead of a dishonest and fraudulent one. Damages which leave it to stand but purge it of fraud are what should be recovered . . . . It respects the fair value of the disputed claim as the subject of a reasonable and just compromise . . . . It is the excess of that value upon the true state of facts as known or honestly believed over the value fixed upon a false state of facts, fraudulently asserted, which constitutes the plaintiff's actual loss from the fraud. [*Id.,* pp 339-340.]

extent of the insurance coverage. The United States Court of Appeals for the Second Circuit, applying New York law that "one who has been induced by fraudulent misrepresentation to settle a claim may recover damages without rescinding the settlement," *Slotkin, supra,* p 312 (citations omitted), held that the plaintiffs were entitled either to rescind the settlement agreement or to ratify it and sue for fraudulent misrepresentation. The court stated:

> If all that will result from a misrepresentation is a new trial, then the party making it has everything to gain and nothing to lose. . . . As McCormick notes in the case of willful fraud: "[I]f the defendant by willful falsehood has cozened the plaintiff into risking his property upon a bargain, which, upon the information given by the defendant, would have been profitable, a remedy which merely seeks to place the plaintiff back in the position he was in before seems hardly adequate. The plaintiff might well be given the value of the expected bargain. A willful fraud should cost as much as a broken promise. If the cheat can anticipate that the worst that can happen is that he shall be called upon to pay back his profit upon the trade, he may be encouraged to defraud."
>
> C. McCormick, Handbook on the Law of Damages, § 121 at 453 (1935). Thus, the New York rule serves to deter fraud. [*Id.,* p 312.]

The *Slotkin* court held that the plaintiffs were not obliged to incur the risks, i.e., a verdict smaller than the original settlement amount or possibly an adverse verdict, that a retrial would have presented:

> The law of damages is clear: "If the effort, risk, sacrifice, or expense which the person wronged must incur in order to avoid or minimize a loss or

injury is such that under all the circumstances a reasonable man might well decline to incur it, a failure to do so imposes no disability against recovering full damages." C. McCormick, supra, § 35. [*Id.,* p 313. See also *Sade v Northern Natural Gas Co,* 483 F2d 230 (CA 10, 1973); *Yeadon v New York City Transit Authority,* 719 F Supp 204 (SD NY, 1989); *Cresswell v Sullivan & Cromwell,* 668 F Supp 166 (SD NY, 1987); *Barrett v United States,* 651 F Supp 615 (SD NY, 1986); *Byrnes v Nat'l Union Ins Co,* 34 AD2d 872; 310 NYS2d 781 (1970).]

In *DiSabatino v United States Fidelity & Guaranty Co,* 635 F Supp 350 (D Del, 1986), litigation arose out of a case settled in state court involving the alleged medical malpractice of the defendant's insured. The plaintiffs claimed, in the federal suit based on diversity jurisdiction, that Fidelity, through its agent, fraudulently misrepresented the amount of insurance coverage and that, absent this misrepresentation, a trial or settlement in the state court action would have resulted in a substantially greater recovery. The plaintiffs proceeded in federal court on a fraud theory and requested compensatory and punitive damages. The defendants argued that the plaintiffs' only remedy was to rescind the settlement and proceed upon the underlying negligence cause of action. The federal court applied the substantive law of Delaware and, noting that Delaware case law recognized that a party defrauded on a contract may elect either to rescind the contract or to affirm it and sue for damages, applied this principle in the context of the release of a tort claim. Recognizing that its conclusion "is in fundamental contradiction to the reasoning of courts which differentiate between a simple contract and a settlement of a tort claim," *id.,* p 353, the court nevertheless

concluded that "[a] contrary holding fails both on grounds of analytical consistency and for reasons of policy." *Id.* The *DiSabatino* court acknowledged the *Shallenberger* decision, but refuted its underlying rationale that the releasor in a tort action relinquishes nothing even of an intangible nature (see the discussion above, pp 193-195):

> [T]he fallacy of this position is evident. A tort claimant may indeed have lost something by deciding not to prosecute an action and instead to accept a monetary consideration in settlement. The court in *Shallenberger* does not attribute any value to opportunities foregone. The lapse of time may well affect the cost of bringing suit. A statute of limitation may have run out. . . . A reinstatement of the action may be barred by res judicata. See *Sade v Northern Natural Gas Co,* 483 F2d 230, 234 (CA 10, 1973) (suit might be barred against defendant's employees if plaintiff is forced to set aside release given to defendant employer).
>
> A settlement agreement is surely a contract, for which consideration on both sides has passed. The consideration given by the plaintiff, the right to prosecute his tort claim—like something which a seller has sold and whose value in use is bound to decline—certainly will change in value with the passage of time. In effect, the plaintiff is a seller of a cause of action of which he must regain possession. "Each change of possession of that something will ordinarily involve expense or inconvenience." *Shallenberger* [5 Ohio Op 2d 178] 150 NE2d 300. [*Id.,* p 354.]

Addressing the argument that damages in a fraud action are too speculative and are inextricably bound with the question of liability and the nature and extent of the injuries involved in the underlying tort claim which was settled, the *DiSabatino* court responded:

Such reasoning simply does not address the interests a plaintiff seeks to vindicate who alleges fraudulent misrepresentation. In any action based on fraud, the fact finder will simply measure the extent of the plaintiff's damages by examining what the agreement would have been, had the parties known the actual material facts. The nature of the injuries in the foregone tort action are relevant only to the extent of how they would affect the value of the claim to be compromised in the context of the actual coverage provided by the defendant insurance carrier. The plaintiff has affirmed its agreement to settle; thus the fact finder need not conjecture what another jury would have awarded in tort damages. . . . The plaintiff may keep what he received and file suit against the ones committing the alleged fraud and recover "such an amount as will make the settlement an honest one." [*Automobile Underwriters, Inc v Rich,* 222 Ind 384, 390; 53 NE2d 775 (1944).] In other words, the measure of damages is the "loss of the bargain." See *Slotkin v Citizens Casualty Co of New York,* 614 F2d 301, 313 (CA 2, 1979), cert den 449 US 981; 101 S Ct 395; 66 L Ed 2d 243 (1980) . . . . [*Id.,* p 355.][5]

### III

Having considered the divergent points of view with respect to the issue at hand, we are persuaded that plaintiffs in the instant case should be allowed to proceed with their independent cause of action at law for damages arising out of the alleged fraudulent misrepresentations of the St.

---

[5] The *DiSabatino* court also cited policy reasons for its decision. A rule allowing an independent action in fraud for damages would enforce a higher standard of care among insurance agents. *Id.,* p 356. Moreover, the greater opportunity to commit fraud in release of tort claims than in typical commercial contracts, where the parties are more often on an equal footing, and the frequent impossibility of restoring the status quo ante, provide further grounds for allowing an independent action at law. *Id.*

Amours in the Cheboygan Circuit Court action. We are influenced not only by reasoning utilized by the courts in *DiSabatino* and *Slotkin, supra,* but also by other considerations peculiar to Michigan jurisprudence.

The cornerstone of our conclusion is the common-law principle, long recognized in Michigan, that an action at law will lie to recover damages for fraud. See *Schaffer, supra; Spanos, supra.* While the more recent court rule, MCR 2.612, provides for relief from a judgment when fraud has been committed in connection with obtaining the judgment, nothing in the language of MCR 2.612 supports or requires a conclusion that it provides an exclusive remedy under the circumstances and precludes any independent action at law for fraud. In this regard, we find instructive the interpretation of FR Civ P 60(b), which substantively is the same as MCR 2.612, and from which the Michigan court rule is derived.[6] In *Cresswell v Sullivan & Cromwell, supra,* the plain-

---

[6] FR Civ P 60(b) provides in relevant part:

Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . . The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, USC, § 1655, or to set aside a judgment for fraud upon the court.

tiffs contended that during the pendency of prior litigation that culminated in settlement, the defendants intentionally withheld documents that were requested during discovery. The plaintiffs sought damages, arguing that the measure of damages is the difference between what they actually settled for and what they would have been able to achieve by way of settlement had they known about the documents that were not produced. The defendants argued that FR Civ P 60(b) provided the exclusive remedy for a party claiming to have been defrauded into agreeing to a settlement leading to an entry of judgment. The defendants further maintained that the court was required to look through the plaintiffs' characterization of the action and see it for what it was: an action attacking the validity of a judgment. The federal court rejected this argument, and stated:

> [T]his case involves a claim that does not depend on the merits of the prior actions, although the merits of the prior actions are certainly relevant to the claim. The claim is not that, had full disclosure been made, the plaintiffs would have prevailed. Instead, the claim is that, had full disclosure been made, the plaintiffs would have bargained for a greater settlement.
>
> * * *
>
> [N]othing in the language of Rule 60(b) supports the defendants' contention that it precludes an action for fraud in connection with a settlement. Rule 60(b) denotes instances when a court "may relieve a party . . . from a judgment," but it does not purport to cover damages actions for fraud that seek to affirm or ratify a judgment rather than seek relief from a judgment. Its focus is on a specific remedy—obtaining relief from a judgment —not on all available remedies for fraud. [*Cresswell, supra,* pp 169-170.]

The *Cresswell* court held that because Rule 60(b) by its terms did not control the situation, it was necessary to look to New York law governing a common-law fraud claim. The court chose to follow *Slotkin, supra,* stating:

[A]ssume that the action under Rule 60(b) would be the only relief against fraud in connection with the settlement, . . . thus allowing for no damages based on the alleged settlement fraud. This would be an outrageous result. Although the plaintiffs could presumably go to trial or get a greater settlement based on their new-found knowledge of the Exchange investigation, they would have no claim for actual or punitive damages for an act determined by the court to be fraudulent. The drafters of the Federal Rules clearly could not have intended this deprivation of a state law substantive right. [*Cresswell, supra,* p 172, n 3.]

If this were the rule, few plaintiffs would choose to enforce their claims of fraud in connection with a settlement, no matter how valid their cause of action. A plaintiff who must give up any benefit he has gained and risk receiving nothing in return will be reluctant to enforce his rights as a victim of fraud. Of course, he may ultimately gain more than he received in settlement the first time, either by going to trial this time around or settling for more, allowing negotiation to set a value on the second alleged instance of fraud. But this chance of receiving more does not justify the deterrent effect of requiring a plaintiff to give up the settlement he received for one claim of fraud to sue for further acts of fraud. [*Id.,* p 172.]

The reasoning of *Cresswell* applies with equal force to the present situation, where plaintiffs, like the *Cresswell* plaintiffs, do not seek "relief" from a "judgment" within the terms of MCR 2.612. Instead, they seek to affirm the judgment of settle-

ment and sue for additional damages caused only
by the alleged fraud involving the failure to reveal
during discovery Patricia St. Amour's prior medi-
cal treatment for the same physical complaint that
formed the basis of the original negligence claim.
Certainly, as the *Cresswell* court recognized, the
merits of the prior action will be relevant, but the
issue will differ—whether the settlement value in
the original case would have been lower absent the
fraud, and, if so, by what amount. Under these
particular circumstances and because plaintiffs do
not seek a remedy in the form of equitable relief
from the original judgment, the legitimate con-
cerns regarding collateral estoppel and res judi-
cata raised in *Fawcett v Atherton* and *Rogoski,
supra,* are inapposite.

Our position allowing the present independent
action at law to proceed is further reinforced by
Michigan case law, which, like the law of New
York, allows for an election of remedies in a
contract setting. In *Hutchings v Takens,* 287 Mich
96; 282 NW 915 (1938), the plaintiff sought dam-
ages for fraud and deceit alleged to have been
practiced upon him incident to the settlement of a
business transaction with the several defendants.
The defendants denied the alleged fraud and
claimed that, without rescission and return or
tender of the consideration received, the plaintiff
could not recover damages in the action at law.
The Court held,

> Plaintiff, by this action, has elected to treat the
> settlement as subsisting and in effect affirms it,
> but that does not bar this action to recover dam-
> ages to the extent of clearing the transaction of
> established fraud and deceit. [*Hutchings, supra,* p
> 100. See also *Puffer v State Mutual Rodded Fire
> Ins Co,* 259 Mich 698; 244 NW 206 (1932); *Speath v
> Merchants' Life Ins Co,* 245 Mich 100; 222 NW 88

(1928); *French v Mulholland,* 218 Mich 248; 187 NW 254 (1922).]

In *Kordis v Auto Owners Ins Co,* 311 Mich 247; 18 NW2d 811 (1945), the plaintiff was seriously injured and permanently disabled as a result of being struck by an automobile owned by the defendant's insured. Some months after the accident, as alleged by the plaintiff, the defendant's agent induced the plaintiff by false and fraudulent representations to sign a release of any claim he might have against the insured and, in consideration for the release, paid the plaintiff the sum of $2,000. The plaintiff subsequently brought an independent action at law for damages. The defendant filed a motion to dismiss the suit on the grounds that in the absence of rescission of the amount paid in consideration for the release, the plaintiff could not go forward with his action. The trial court granted the defendant's motion, but this Court reversed, stating:

> Plaintiff does not seek to rescind his release of the tortfeasor (Knaus) from liability and recover on the initial tort. Restoration or tender of the money paid for the release, alleged to have been obtained fraudulently, is not required in the instant suit.
> "It is intimated by counsel that relator has not rescinded the contract and offered to restore what she received. Upon this proposition it need only be said that it is well-settled law that no rescission or restitution is necessary as a condition precedent to maintaining an action for damages arising from false representations and deceit. 20 Cyc, p 91, and cases cited; *Wegner v Herkimer,* 167 Mich 587 [133 NW 623 (1911)]." *Merlau v Kalamazoo Circuit Judge* [180 Mich 393; 147 NW 503 (1914)]. [*Kordis, supra,* pp 251-252.]

The *Kordis* Court also found untenable the de-

fendant's contention that plaintiff's claim did not set forth sufficient facts to furnish a basis for measuring damages:

> In this jurisdiction a wrongdoer has not been permitted to say that because the damage he has done to an injured party is not capable of determination with precise accuracy, therefore such injured party can recover nothing from the wrongdoer. More than 60 years ago Justice COOLEY in *Briggs v Brushaber* [43 Mich 330; 5 NW 383 (1880)], wherein plaintiff sought recovery for an alleged fraud, said:
> "It is true this (plaintiff's damage) could not be definitely fixed by the evidence; witnesses might disagree respecting it; the market value of lands might rise afterwards to an extent that would make the mortgage available to its full amount; but there is nothing unusual in contingencies of this sort being involved in litigation and casting uncertainty upon any attempt to do justice. . . . But controversies of the sort can only be determined in one way: the jury must judge of the extent of the damage by such evidence of value as the parties may be able to produce." [*Id.,* pp 252-253.]

*Kordis* provides a firm foundation for our conclusion in the instant case that plaintiffs' cause of action at law should be allowed to proceed. By interpreting MCR 2.612 in a nonexclusive manner, the common-law election of remedies doctrine expressed in *Kordis* remains a viable option for a party who allegedly has been defrauded by an adversary's misconduct.

Defendants argue that by not explicitly seeking to set aside the previous judgment, the plaintiffs will actually be in a better position than before the action; by pursuing an action at law rather than rescission, the release that defendants signed

will still bind them and preclude further recourse for their injuries, yet allow plaintiffs to recoup the settlement funds already paid in the form of "damages."

However, the merits of defendants' argument that plaintiffs may not have suffered any actionable damage because of the failure to reveal the name of Dr. Thiel and his treatment of Patricia St. Amour is the proper subject of this independent action. Assuming that the plaintiffs set forth sufficient evidence of the elements of fraud, the trier of fact should determine "the probable amount of settlement in the absence of fraud after considering all known or foreseeable facts and circumstances affecting the value of the claim on the date of settlement" and award damages accordingly. *DiSabatino, supra,* p 355. As the *DiSabatino* and *Cresswell* courts recognized, the rule that we would adopt today serves not only to deter fraud but to vindicate the interests of the defrauded party. These are compelling interests that would require us not to limit the plaintiffs' relief under the present circumstances.

The lead opinion for reversal maintains that while there may be some justification for allowing an independent action at law for fraud when the plaintiff is the releasor in a tort action, almost none of those grounds exist when the plaintiff is the tortfeasor. This proposed distinction between fraud committed by a plaintiff and fraud committed by a defendant in an underlying tort action is an artificial one. As the *DiSabatino* court noted, "A settlement agreement is surely a contract, for which consideration *on both sides* has passed." *DiSabatino, supra,* p 354 (emphasis added). Insurance fraud, such as that allegedly involved in the instant case, is particularly insidious. According to one recent study, ten to fifteen percent of all

automobile insurance claim dollars involve some fraud, contributing substantially to the high cost of insurance. See Emerson, *Insurance claims fraud problems and remedies,* 46 U Miami L R 907, 913, n 24 (1992). The ultimate conclusion must be that fraud is no less damaging to a settling defendant than to a settling plaintiff and should not be tolerated in one circumstance more than the other.

Justice BOYLE's fear that a rule permitting a party to sue for damages in an independent action at law will render moot the equitable remedy provided by MCR 2.612 is overstated. The present holding pertains to only one of several subcategories of situations covered by MCR 2.612—those cases involving fraudulently induced settlement agreements. MCR 2.612 addresses many other grounds for setting aside a judgment (not limited to settlement agreements) and will continue to remain the appropriate avenue of relief in those instances.

While a party who initiates an action at law for damages because he has been defrauded in the execution of a settlement agreement may, as the lead opinion points out, be better off ratifying the settlement and suing for fraud, the requisite proofs in achieving that end are no less formidable than those facing a party who pursues relief under MCR 2.612. Just as a party seeking equitable relief from a judgment based on fraud "must offer clear and convincing proof to establish that the evidence underlying the judgment was indeed fabricated or concealed," Restatement Judgments, 2d, § 70, comment d, p 183, a party suing in an action at law for fraud in the execution of a settlement agreement similarly bears the heavy burden of proving the elements of the alleged fraud as well as the costs and other consequences of any such action if

it is found to be frivolous in its conception.[7] As explained by the court in *Columbus Pipe & Equipment Co v Sefansky*, 352 Mich 539, 543-544; 90 NW2d 492 (1958),

> The doctrine is well established that fraud will not be presumed, but must be proved.
>
> The burden of proof rests upon plaintiff to show actionable fraud, the elements of which have been stated in a number of cases, particularly in *Candler v Heigho*, 208 Mich 115, 121 [175 NW 141 (1919)] . . . . Those elements are: (1) that a material representation was made; (2) that it was false; (3) that the party making it knew that it was false at the time he made it, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the inten-

---

[7] Sanctions authorized by court rule and statute should be strictly administered to cull those cases that are meritless. MCR 2.625(A)(2) provides,

> (2) Frivolous Claims and Defenses. In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591; MSA 27A.2591.

MCL 600.2591; MSA 27A.2591 states in pertinent part:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the non-prevailing party and their attorney.
>
> \* \* \*
>
> (3) As used in this section:
>
> (a) "Frivolous" means that at least 1 of the following conditions is met:
>
> (i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (iii) The party's legal position was devoid of arguable legal merit.

tion that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Each of these elements must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.* [Citations omitted; emphasis added.]

See also *Hyma v Lee,* 338 Mich 31, 37; 60 NW2d 920 (1953).

IV

For the reasons set forth, we would affirm the decision of the Court of Appeals and remand this case to the Kalkaska Circuit Court for a determination of the venue issue and for such further proceedings as may be appropriate consistent with this opinion.[8]

CAVANAGH, C.J., and BRICKLEY, J., concurred with GRIFFIN, J.

---

[8] Because the issue of venue was never addressed in the courts below, it is not properly before this Court. See *Blair v Wayne State Univ,* 393 Mich 769; 224 NW2d 283 (1974).