Patty MACKLEY, Appellant,

v.

ALLSTATE INSURANCE COMPANY, Respondent.

No. KCD 29552.

Missouri Court of Appeals, Kansas City District.

April 3, 1978.

Richard E. Duggan, Duggan & Keleher, Kansas City, for appellant.

Max W. Foust, G. Spencer Miller, Morris, Foust, Beckett & Ponick, Kansas City, for respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

SOMERVILLE, Presiding Judge.

Plaintiff filed suit against defendant for "fraud and deceit". The gravamen of plaintiff's action being that "defendant's agents, servants and employees" fraudulently (fraud in the treaty as opposed to fraud in the factum) induced her to execute a general release as to all claims for damages for personal injuries sustained in an automobile accident on or about October 11, 1975, involving defendant's insured. Defendant's motion "to dismiss plaintiff's petition for failure to state a cause of action for which relief may be granted" was sustained by the trial court and plaintiff appealed.

One epochal question—whether the releasor of an unliquidated tort claim can stand upon a fraudulently induced release and maintain an action for fraud and deceit for the damages growing out of the fraud practiced upon him—is presented on appeal.

It is axiomatic that a release is a species of contract. Using that as a starting point, plaintiff contends on appeal that general principles of contract law are determinative of whether her petition states a claim or cause of action under prevailing substantive law. One principle of contract law in particular is heavily relied upon by plaintiff, namely, that a party who has been fraudulently induced (fraud in the treaty) to enter into a contract has an election of remedies because a fraudulently induced contract is voidable. This basic principle of contract law has been pungently stated in *Hostler v. Holland Furnace Company*, 327 S.W.2d 532, 534 (Mo.App.1959) as follows: "There can be no doubt that the petition alleges fraud and deceit in the procurement of the contract. Under this state of facts, the plaintiff has two remedies. She may stand upon the contract and sue for damages growing out of the fraud practised upon her in the procurement of the contract, or she may elect to rescind the contract and sue to have the same cancelled."

Although the above prevails in this state as a general principle of contract law, plaintiff's reliance upon it as controlling authority in the instant case is misplaced as a specific exception or variation thereto has heretofore been judicially carved with respect to fraudulently induced releases of unliquidated tort claims. This exception or variation was carved in *Lomax v. Southwest Missouri Electric Ry. Co.*, 106 Mo.App. 551, 81 S.W. 225 (1904). The trial court's sustension of a demurrer to the petition of the plaintiff therein was affirmed on appeal. The court in *Lomax* reasoned that the plaintiff therein had no cause of action for fraud and deceit by reason of having been fraudulently induced to release an unliquidated tort claim for personal injuries because the fraudulently induced release was void rather than voidable and therefore the releasor suffered no damage. This synoptic view of *Lomax* is garnered from the following portion of said opinion, 81 S.W. at 225–6: "The petition is thought to be without a precedent. It is noticeable that it is not an action to set aside a release obtained by fraud, and for a finding and judgment for plaintiff for the damages he had sustained by reason of the negligence of the defendant, but is for damages alleged to have sustained for the deceit in obtaining the release itself. Plaintiff relies on the case of *Parker v. Marquis*, 64 Mo. 38, and kindred cases, where it is held that: 'A party defrauded on a contract may stand by it, even after he discovers the fraud, and recover damages resulting from the fraud; or may rescind the contract, and recover back what he has paid or sold.' But this is an entirely different case. If the allegations of the petition are true—and for the purpose of the demurrer they must be so taken—the release is void both in law and in equity, *and in executing the release the plaintiff parted with nothing. His original cause of action, which was the property, if any, in dispute, remains to him. The defendant is still liable to him for the damages he sustained, if any, notwithstanding the fraudulent release.*" (Emphasis added.)

The reasoning behind the ultimate holding in *Lomax* appears highly cursory at first blush. A closer look, however, impresses one with the strength and depth of its pithy logic and reasoning. Since the releasor for a consideration merely settled

his unliquidated tort claim without resort to litigation, he parted with nothing and stood undamaged if the release was induced by fraud. Under such circumstances his original cause of action remained viable and the releasee's liability, if any, for damages sustained by the releasor as a result of the underlying tort was never discharged. In short, no damage inured to the releasor by reason of the fraudulently induced release.

Concededly, a split of authority exists among various jurisdictions concerning the issue at hand. The following cases are illustrative of jurisdictions holding that the releasor of an unliquidated tort claim may stand upon a fraudulently induced release and maintain an action for fraud and deceit for the damages growing out of the fraud practiced upon him: *Urtz v. New York Cent. & H.R.R. Co.,* 202 N.Y. 170, 95 N.E. 711 (1911); *Automobile Underwriters, Inc. v. Rich,* 222 Ind. 384, 53 N.E.2d 775 (1944); *Brown v. Ocean Accident & G. Corp., Ltd., of London,* 153 Wis. 196, 140 N.W. 1112 (1913); *Kordis v. Auto Owners Ins. Co.,* 311 Mich. 247, 18 N.W.2d 811 (1945); and *Ware v. State Farm Mutual Automobile Ins. Co.,* 181 Kan. 291, 311 P.2d 316 (1957). The cases just cited principally turn on the fact that no pragmatic distinction is recognized between contracts in general and releases of unliquidated tort claims induced by fraud. The following cases are illustrative of jurisdictions holding that such actions may not be maintained: *Taylor v. Hopper,* 207 Cal. 102, 276 P. 990 (1929); *Davis v. Hargett,* 244 N.C. 157, 92 S.E.2d 782 (1956); and *Shallenberger v. Motorists Mutual Ins. Co.,* 167 Ohio St. 494, 150 N.E.2d 295 (1958). These cases recognize a pragmatic distinction between contracts in general and releases of unliquidated tort claims induced by fraud and certain peculiarities attached to the latter are weighted as grounds for precluding maintenance of a separate action for fraud and deceit.

In addition to the sparse logic and reasoning facially indulged by the court in *Lomax v. Southwest Missouri Electric Ry. Co.,* supra, other cogent and persuasive reasons may be marshalled to support the holding therein that the releasor of an unliquidated tort claim cannot stand upon a fraudulently induced release and simultaneously maintain an action for fraud and deceit for damages growing out of the fraud practiced upon him. The following are but a few examples which readily spring to mind. One, ordinary contracts and releases are not truly analogous because in the former a person subjected to fraud in the inducement has usually parted with something tangible while in the latter a releasor subjected to fraud in the inducement has actually parted with nothing as he can still maintain an action on the underlying tort. Two, it is illogical to say that a releasor claiming fraud in the inducement can simultaneously affirm the extrajudicial settlement of his claim for damages for personal injuries sustained as a result of the underlying tort and at the same time renege on his bargain and maintain an action for fraud and deceit when the measure of damages, if any, in the action for fraud and deceit is inextricably bound with the question of liability and the nature and extent of the injuries involved in the underlying tort claim which was settled. Three, inherent difficulties cloud the measure and assessment of damages. Some of the difficulties are pointed up in *Taylor v. Hopper,* supra, 276 P. at 991: "The difficulty in determining the amount of damages is insurmountable. If the jury found a fraud had been committed upon plaintiff to induce her to give up her cause of action, how would it determine what amount, if any, she would have received from another jury, had she not compromised her action, but had proceeded to trial? And how could damages in the instant case be assessed without some measure of what would have been accorded to plaintiff in the original action, had she proceeded to trial?" Four, if a releasor claiming fraud in the inducement stands on the release (retains the fruits of the settlement) and brings an action for fraud and deceit and fails to obtain a verdict in his favor, an absurd and unjust result has been legally foisted because the releasee for all practical purposes was held to the release while the releasor for all practical purposes was re-

leased therefrom (as evidenced by his bringing a fraud action which inextricably involves the underlying tort claim) without parting with any consideration. Such a result does violence to the proposition that equality of application is the quintessence of a fair and reasonable legal principle.

Plaintiff argues that *Metropolitan Paving Co. v. Brown-Crummer Inv. Co.,* 309 Mo. 638, 274 S.W. 815 (banc 1925), although not expressly overruling *Lomax v. Southwest Missouri Electric Ry. Co.,* supra, seriously questions the wisdom of and the rationale behind the result it reached, and for that reason *Lomax* should no longer be followed. A careful reading of *Metropolitan Paving Co.* reveals that it makes merely a passing reference to *Lomax* and holds that "on the facts stated", i. e., the facts in *Metropolitan Paving Co., Lomax* is "unsound", i. e. inapplicable. Beyond question, the facts in *Lomax* and the facts in *Metropolitan Paving Co.* are readily distinguishable, thus accounting for the terse statement in *Metropolitan Paving Co.* that "on the facts stated" the ruling in *Lomax* is "unsound". *Metropolitan Paving Co.* involved assignment of a contract whereby the plaintiff therein agreed to sell and one defendant therein agreed to purchase from plaintiff, at par, certain bonds of the city of Marysville, Kansas, which plaintiff was to receive for performance of a paving contract. Said defendant, in return, was to advance the necessary money to plaintiff to pay the expense of the work in progress before the bonds were issued. The assignee of the contract was a co-defendant who subsequently contracted with the plaintiff that in return for providing plaintiff the necessary money to perform the paving contract with the city the plaintiff would sell said bonds when issued to co-defendant at ninety-six cents on the dollar. Plaintiff's assignment of its rights under the original contract with defendant was made a condition of the subsequent contract entered into with the co-defendant. Plaintiff claimed that the assignment was fraudulently induced by both defendant and the co-defendant. It is patent that the assignment under attack in *Metropolitan Paving Co.* can be broadly characterized as an ordinary contract rather than a particular species of contract as is a release. Moreover, the measure of damages in *Metropolitan Paving Co.* was readily ascertainable as the bonds in the contract which plaintiff assigned were to be purchased at par from plaintiff while the assignee of the contract was obligated to pay plaintiff only ninety-six cents on the dollar for said bonds by virtue of its contract with plaintiff.

This court concludes that the logic and reasoning undergirding *Lomax v. Southwest Missouri Electric Ry. Co.,* supra, remain sound, and that *Lomax* has not been vitiated or overruled by *Metropolitan Paving Co. v. Brown-Crummer Inv. Co.,* supra. Therefore, subscribing to *Lomax v. Southwest Missouri Electric Ry. Co.,* supra, as properly enunciating the substantive law of this state applicable to and controlling the issue at hand, this court holds that plaintiff's petition fails to state a claim or cause of action against the defendant and the trial court properly sustained defendant's motion to dismiss said petition.

Judgment affirmed.

All concur.