166 F.3d 1006
 29 Envtl. L. Rep. 20,643, 99 Cal. Daily Op.
Serv. 909,
1999 Daily Journal D.A.R. 1155
 David MATSUURA, individually and dba Orchid Isle Nursery,
and Stephen Matsuura, individually and dba
Hawaiian Dendrobium Farm,
Plaintiffs-counter defendants-Appellants,
v.
ALSTON & BIRD, a Georgia partnership including professional
corporations, Defendant,
and
E.I. duPont de Nemours and Company, Inc., a Delaware
Corporation, Defendant-counter plaintiff-Appellee.
David Matsuura, individually dba Orchid Isle Nursery;
Stephen Matsuura, individually dba Hawaiian
Dendrobium Farm, Plaintiffs-Appellants,
v.
E.I. duPont de Nemours and Company, Inc., a Delaware
Corporation, Defendant-Appellee.
 Nos. 97-16400, 97-17033.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 9, 1998.
Decided Feb. 2, 1999.
 
 Stephen T. Cox, Molligan, Cox & Moyer, San Francisco, California, for the plaintiffs-appellants.
 William H. Boice and A. Stephens Clay, Kilpatrick Stockon, Atlanta, Georgia, for the defendant-appellee.
 Appeals from the United States District Court for the District of Hawai'i; David Alan Ezra, District Judge, Presiding. D.C. Nos. CR-96-01180 DAE, CV-96-01180-DAE.
 Before: BROWNING, GOODWIN, and SCHROEDER, Circuit Judges.
 PER CURIAM:
 
 
 1
 After settling their product liability suits against E.I. du Pont de Nemours and Company, Inc. (DuPont), David and Stephen Matsuura allegedly discovered that DuPont had fraudulently induced them to settle for less than the fair value of their claims. They sued DuPont[1] for fraud, but the district court held the suit was barred by general releases in the settlement agreements. We conclude that under Delaware law, which governs, defrauded tort plaintiffs may stand by their settlement agreements and institute an independent action for fraud, which the Matsuura-DuPont releases do not bar. We therefore reverse.
 
 
 2
 * The Matsuuras, commercial nurserymen, alleged in their product liability suits that a DuPont fungicide, Benlate, was contaminated with herbicides, which killed their plants.[2] Many similar suits were filed by commercial growers across the nation. In early trials, DuPont falsely represented that soil tests had produced no evidence of contamination. During consolidated discovery proceedings in Hawaii, which included the Matsuuras' suits, DuPont falsely denied withholding evidence of Benlate contamination, and improperly invoked work product protection to resist disclosure of testing data. The Matsuuras allege DuPont took these steps to induce Benlate plaintiffs to settle their cases for less than their fair value.
 
 
 3
 After the Matsuuras settled, DuPont disclosed its testing data in the Hawaii discovery proceedings. Contrary to DuPont's prior representations, the tests confirmed that Benlate was contaminated. Additional evidence of Benlate contamination was produced in other Benlate litigation. Two district courts held that DuPont had intentionally engaged in fraudulent conduct by withholding this evidence. See Kawamata Farms v. United Agri Prods., 86 Hawaii 214, 948 P.2d 1055, 1083, 1087-88 (1996) (imposing $1.5 million punitive sanction for discovery abuse), aff'd, 86 Hawaii 214, 948 P.2d 1055 (Haw.1997); In re E.I. du Pont de Nemours and Co.--Benlate Litig., 918 F.Supp. 1524, 1556-58 (M.D.Ga.1995) (imposing sanctions potentially totaling $115 million), rev'd on other grounds, 99 F.3d 363 (11th Cir.1996). Although the Eleventh Circuit reversed the Georgia court on the ground that the sanctions were punitive and the court had not followed applicable criminal procedure, the court noted the "serious nature of the allegations" and stated that it assumed the U.S. Attorney would conduct an investigation, In re E.I. DuPont, 99 F.3d at 369 n. 7. On remand, the district court asked the United States Attorney to "investigate and prosecute" DuPont for criminal contempt, In re E.I. du Pont, No. 4:95-CV-36 (HL) (M.D.Ga. Nov. 4, 1998) (order referring matter to U.S. Attorney), but the court ultimately approved a civil settlement resolving the matter, which required DuPont and Alston & Bird to make payments totalling $11.25 million, see In re E.I. du Pont, No. 4:95-CV-36 (HL) (M.D.Ga. Dec. 31, 1998) (consent order and final judgment).
 
 
 4
 In their present suit, the Matsuuras allege DuPont committed this fraud to induce them and other Benlate plaintiffs to settle. The district court granted DuPont judgment on the pleadings, ruling the suit was barred by releases signed by the Matsuuras as part of the settlement agreements. The court held the Matsuuras could have rescinded the settlement agreements because of DuPont's fraud, but forfeited that remedy by failing promptly to tender the settlement proceeds. The Matsuuras moved for reconsideration; the court denied the motion. The Matsuuras appeal.
 
 II
 
 5
 Under Delaware law,[3] parties who have been fraudulently induced to enter into a contract have a choice of remedies: they may rescind the contract or they may affirm the contract and sue for fraud. Hegarty v. American Commonwealths Power Corp., 163 A. 616, 619 (Del.Ch.1932). In DiSabatino v. United States Fidelity & Guar. Co., 635 F.Supp. 350 (D.Del.1986), a federal district court sitting in Delaware held that plaintiffs who have been fraudulently induced to settle tort claims have the same choice of remedies under Delaware law. DiSabatino, 635 F.Supp. at 352-53 (discussing Hegarty and Eastern States Petroleum Co. v. Universal Oil Prods. Co., 49 A.2d 612 (Del.Ch.1946)). DiSabatino 's analysis is persuasive.[4]
 
 
 6
 DuPont does not argue that DiSabatino was wrongly decided, but only that it does not control this case. DuPont claims DiSabatino applies only when a tort defendant's insurer fraudulently induces a plaintiff to release claims against its insured. DiSabatino cannot be read so narrowly. Its policy and legal analysis[5] apply regardless of who commits the fraud.[6]
 
 
 7
 DuPont also distinguishes DiSabatino because the court did not discuss the effect of the general release included in the DiSabatino settlement agreement. The district court agreed, and concluded that the terms of the Matsuura-DuPont releases precluded the Matsuuras from suing for fraud. The Matsuuras argue they may affirm the settlement agreement and sue for fraud without regard to the terms of the release.[7] We need not decide whether the Matsuuras are correct, because we conclude that the Supreme Court of Delaware would not interpret the Matsuura-DuPont releases to bar a claim of fraudulent inducement of the releases themselves.
 
 III
 
 8
 We conclude the Supreme Court of Delaware would not interpret the Matsuura-DuPont releases[8] as barring the Matsuuras' fraud claims, for three reasons.
 
 
 9
 First, Delaware principles of contract construction preclude DuPont's broad reading of the release. The Supreme Court of Delaware held in Adams v. Jankouskas, 452 A.2d 148 (Del.1982), that when specific recitals in a release are followed by general language, the general language is restricted by the specific recital. Id. at 156. Applying this rule to the release before it,[9] the court held that general language releasing "all actions ... concerning the estate" did not plainly bar an action against the estate unrelated to the particular items mentioned in the recital. Id. at 156. The Matsuura-DuPont releases begin with a recital that Plaintiffs intended to terminate their litigation of "claims related to [their] purchase and/or use of Benlate fungicide ... and all claims incident thereto." Under Adams, the broad release language relied on by DuPont is restricted by this specific recital--only claims related to the purchase or use of Benlate or incident to the underlying litigation are released. "Claims related to" the Matsuuras' purchase or use of Benlate suggests claims for personal injury and property damage caused by the product or the Matsuuras' decision to use the product; "claims incident to" the claims or the litigation suggests claims likely to arise or naturally arising from the product liability claims or the litigation, which in common understanding would not encompass claims for fraud. Of course, a claim that the settlement agreements were fraudulently induced is "related" to the Matsuuras' use of Benlate and to the underlying litigation in the sense that one would not have occurred but for the other, but applying the phrase literally is "a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 335, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (Scalia, J., concurring). We cannot agree with the district court that the Matsuuras' fraud claims "clearly fall within the scope" of the general language of the release.[10]
 
 
 10
 Second, the Delaware Court is likely to impose a clear statement requirement for release of fraudulent inducement claims. Contract clauses purporting to relieve a party from future liability for negligence are enforceable in Delaware only if the language is "crystal clear and unequivocal." State v. Interstate Amiesite Corp., 297 A.2d 41, 44 (Del.1972); see also J.A. Jones Constr. Co. v. City of Dover, 372 A.2d 540, 552-53 (Del.Super.Ct.1977) (such provisions are enforceable only if "the parties specifically contemplated that the contracting party would be relieved of its own defaults") (listing cases applying rule). A release for fraudulent inducement of a settlement contract is analogous: like a release for future negligence, it relieves the defendant of liability for defendant's own wrongdoing when it is still within defendant's power to avoid the wrongdoing. A clear statement rule is particularly appropriate where, as in this case, the claim is one that ordinarily would not be released knowingly.
 
 
 11
 Third, Delaware courts are reluctant to enforce unintended releases of fraud claims; express language in contracts that seemed to bar such claims has been disregarded. The Supreme Court of Delaware has repeatedly said that fraudulent inducement claims based on representations made outside a contract are not barred by contract language stating the parties relied only on representations in the contract. See Norton v. Poplos, 443 A.2d 1, 6 (Del.1982); Omar Oil & Gas Co. v. Mackenzie Oil Co., 138 A. 392, 398 (Del.1926). The Court reached this result because "the law is ... diligent in discovering fraud, and relieving against its consequences." Omar Oil, 138 A. at 398; see also Webster v. Palm Beach Ocean Realty Co., 139 A. 457, 460 (Del.Ch.1927) ("A perpetrator of fraud cannot close the lips of his innocent victim by getting him blindly to agree in advance not to complain against it.").[11] If a release of "any and all claims" were held to bar this fraud action, DuPont, the alleged perpetrator of the fraud, would have successfully silenced its victims by fraudulently inducing them blindly to agree in advance not to complain.
 
 
 12
 The Delaware Court is likely to interpret a release to bar a claim for fraudulent inducement of that release, if ever, only if the parties clearly and affirmatively expressed their intent to do so. The Matsuura-DuPont releases do not mention fraudulent inducement of the releases themselves. We do not believe the Supreme Court of Delaware would interpret these releases to discharge such claims.[12]IV
 
 
 13
 Permitting the Matsuuras to affirm their settlement agreements and sue DuPont for fraud will further Delaware's policy favoring voluntary settlement of legal disputes. Insistence on the finality of settlements is based on the assumption that the parties have freely bargained to exchange the costs, risks and potential rewards of litigation for the certainty of a settlement that seems fair in light of facts known at the time. In re Enstar Corp., 593 A.2d 543, 548 (Del.Ch.1991) (citing cases), rev'd on other grounds, 604 A.2d 404 (Del.1992). Settlements induced by fraud are set aside, id. at 549, however, because the defrauded party has not freely bargained, but has been induced to settle by affirmative misrepresentations by the other party. Enforcing such a settlement would undermine the policy of encouraging voluntary settlement of disputes: if litigants cannot assume the disclosures and representations of the opposing party are made in good faith, they will be reluctant to settle. Assurance of an adversary's good faith is particularly critical when parties are attempting to resolve a dispute amicably. Because DuPont allegedly breached this trust, the Matsuuras could not and did not freely bargain for the settlement. Denying the Matsuuras any further remedy would undermine rather than further Delaware's policy of encouraging voluntary settlement of claims.
 
 
 14
 REVERSED AND REMANDED.
 
 
 
 [1]
 Alston & Bird, a law firm, is also named as a defendant in the fraud action. Because the Matsuuras' claims against DuPont and Alston & Bird are identical insofar as this appeal is concerned, for purposes of simplicity we refer only to the claims against DuPont
 
 
 [2]
 This summary of facts is based on the allegations in the Matsuuras' complaint, which we accept as true for purposes of reviewing an order granting judgment on the pleadings. Doyle v. Raley's Inc., 158 F.3d 1012, 1014 (9th Cir.1998)
 
 
 [3]
 The Matsuura-DuPont releases provide that they are to be "governed and construed" according to Delaware law. We review a district court's decision on an issue of state law de novo. Astaire v. Best Film & Video Corp., 116 F.3d 1297, 1300 (9th Cir.1997), amended in irrelevant part by, 136 F.3d 1208 (1998), cert. denied, --- U.S. ----, 119 S.Ct. 161, 142 L.Ed.2d 132 (1998). We apply Delaware law as it appears the Supreme Court of Delaware would apply it. Id. In the absence of a Supreme Court decision on point, we must predict how the Court will decide the issue, based on decisions of Delaware courts, decisions from other jurisdictions, treatises and restatements. Id
 
 
 [4]
 The leading cases limiting defrauded tort plaintiffs to the remedy of rescission, Mackley v. Allstate Ins. Co., 564 S.W.2d 634 (Mo.Ct.App.1978), and Shallenberger v. Motorists Mut. Ins. Co., 167 Ohio St. 494, 150 N.E.2d 295 (Ohio 1958), rely on two grounds: (1) rescission provides an adequate remedy for tort victims because they do not give up possession of anything tangible when they settle their cases and thus incur no transaction costs if they rescind the settlements and pursue their underlying tort claims, Mackley, 564 S.W.2d at 636; Shallenberger, 150 N.E.2d at 300, and (2) calculating damages for fraud is unduly speculative and essentially requires litigation of the underlying tort claim. Mackley, 564 S.W.2d at 636; Shallenberger, 150 N.E.2d at 300-01. Because damages for fraud would mirror damages for the underlying torts, for all practical purposes the plaintiffs would be released from the settlement agreements, while defendants would remain bound, an unjust result. Mackley, 564 S.W.2d at 636; Shallenberger, 150 N.E.2d at 301-02. We agree with DiSabatino that these arguments are unpersuasive: (1) rescission is often an inadequate remedy for tort plaintiffs, because they may be prejudiced by delay in pursuing their claims, DiSabatino, 635 F.Supp. at 353-54, and (2) damages for fraud are conceptually different from damages for the underlying tort claims and are not too speculative to calculate, id. at 354-55. We also agree with DiSabatino that there is a compelling policy reason to permit tort plaintiffs to stand by their settlement agreements and sue for fraud, because many tort victims otherwise would be left with no practical remedy. Id. at 355-56. We note that the weight of authority favors according defrauded tort plaintiffs an election of remedies. See Slotkin v. Citizens Cas. Co., 614 F.2d 301, 312-14 (2d Cir.1979) (applying New York law); Automobile Underwriters v. Rich, 222 Ind. 384, 53 N.E.2d 775, 777 (1944); Ware v. State Farm Mut. Auto. Ins. Co., 181 Kan. 291, 311 P.2d 316, 320-21 (Kan.1957); Mlnazek v. Libera, 83 Minn. 288, 86 N.W. 100, 101-02 (Minn.1901); Bilotti v. Accurate Forming Corp., 39 N.J. 184, 188 A.2d 24, 30-35 (N.J.1963); Brown v. Ocean Accident & Guarantee Corp., Ltd., 153 Wis. 196, 140 N.W. 1112, 1115 (1913). But see Taylor v. Hopper, 207 Cal. 102, 276 P. 990, 991-92 (Cal.1929) (holding that defrauded tort plaintiffs may only rescind); Davis v. Hargett, 244 N.C. 157, 92 S.E.2d 782, 786 (N.C.1956) (same). Michigan permits tort plaintiffs to sue defendants' insurers for fraudulent inducement without rescinding the settlement, Kordis v. Auto Owners Ins. Co., 311 Mich. 247, 18 N.W.2d 811, 812-13 (Mich.1945), but may not permit such suits against the defendants themselves, Dresden v. Detroit Macomb Hosp. Corp., 218 Mich.App. 292, 553 N.W.2d 387, 391 (Mich.Ct.App.1996); defrauded tort defendants cannot sue plaintiffs for fraud without rescinding the settlement, Triplett v. St. Amour, 444 Mich. 170, 507 N.W.2d 194, 196-97 (Mich.1993)
 
 
 [5]
 See note 4, supra, regarding DiSabatino 's legal analysis. With respect to policy considerations, DiSabatino explained:
 In such cases the company gambles that the deceit will not be uncovered. If the fraud is uncovered, then the company only faces litigation, or the costs of reimbursement, that it would have had to confront without a settlement.... Second, the opportunities for overreaching and committing fraud in releases of tort claims may be greater than in typical cases of commercial contract fraud, where the parties are more often on an equal footing. Duress, coercion, and immediate need for liquid assets are ever present for the unfortunate tort claimant.
 DiSabatino, 635 F.Supp. at 355-56. This argument has equal force if "the defendant" is substituted for "the [insurance] company."
 
 
 [6]
 DuPont argues that insurance companies would not be sufficiently deterred if rescission were the plaintiff's only remedy. Although the insurer, not the insured, committed fraud, DuPont argues, the plaintiffs' only remedy would be to rescind the settlement agreement and revive their tort suit against the insured, rather than standing by the settlement agreement and suing the insurer, the guilty party, for fraud. The fact that the underlying tort action proceeds against the insured, however, does not mean the insurer is freed from liability: the insurer may be required to pay any judgment against the defendant, up to the limits of the insurance policy
 
 
 [7]
 Although the DiSabatino court did not discuss the language of the release in its opinion, the defendant in that case argued that the release barred the plaintiff's action and the court ruled that the action could proceed. Other courts have suggested that the scope of the release might be irrelevant to the plaintiff's remedies. See Bilotti, 188 A.2d at 33 (when a plaintiff seeks to stand by a fraudulently-induced settlement agreement and sue for fraud, "it is of no importance ... what claims the release purported to discharge."); cf. Ware, 311 P.2d at 320 (defrauded tort plaintiff may "waive his right to rescind and sue to recover any damages suffered by reason of the fraud")
 
 
 [8]
 The relevant passages in the releases are:
 WHEREAS, Plaintiff has filed suit against Defendant ... [asserting] various claims related to Plaintiff's purchase and/or use of Benlate fungicide; ...
 WHEREAS, Plaintiff desires to terminate said litigation, to release and dispose of all claims against Defendant and all claims incident thereto against Defendant ...
 NOW, THEREFORE, in consideration of good and valuable consideration, ...
 
 
 [1]
 Plaintiff hereby releases Defendant from any and all causes of action, claims, demands, actions, obligations, damages, or liability, whether known or unknown, that Plaintiff ever had, now has, or may hereafter have against Defendant, by reason of any fact or matter whatsoever, existing or occurring at any time up to and including the date this Release is signed (including, but not limited to, the claims asserted and sought to be asserted in the Action)
 
 
 [14]
 This document embodies the entire terms and conditions of the Release described herein
 
 
 [9]
 The relevant portions of the release provided:
 I JOHN JANN do hereby acknowledge to have received of and from CHARLOTTE ADAMS, Executrix of the estate of Stella Jankauski ... the sum of $10,000.00, a 6.5 carat diamond ring, one Cadillac automobile, and all securities owned jointly with my wife in full payment and satisfaction of the bequest in Item Four of the will of Stella Jankauski ... And I do hereby release and forever discharge the said executrix as aforesaid of and from all actions, suits, accounts and demands whatsoever, for or concerning the said bequest or for, or concerning the estate ... or any part thereof from the beginning of the world to the date hereof.
 Id. at 155 n. 7.
 
 
 [10]
 DuPont cites several cases to support its argument that Delaware courts will enforce a "general release" of claims. In each of these cases, however, the barred actions fell within a category of claims expressly discharged in the settlement agreement. See Hob Tea Room, Inc. v. Miller, 89 A.2d 851, 854, 856 (Del.1952); Shuttleworth v. Abramo, No. CIV. A. 11650, 1997 WL 349131, at * 3 (Del.Ch. June 13, 1997); Judge Trucking Co., Inc. v. Estate of Cooper, Civ. A. No. 92C-03-041, 1994 WL 680039, at * 1 (Del.Super. Sept.29, 1994); Nationwide Mut. Ins. Co. v. Nacchia, 628 A.2d 48, 49 (Del.1993); Hicks v. Soroka, 188 A.2d 133, 134 (Del.Super.Ct.1963). The Matsuura-DuPont releases do not expressly encompass fraud claims. The Supreme Court of Delaware has refused to apply sweeping release language literally, and has found ambiguity in apparently definitive all-inclusive language. In Chakov v. Outboard Marine Corp., 429 A.2d 984 (Del.1981), for example, the Court stated that a general release of claims against particular defendants "and all other persons, firms or corporations liable or who might be claimed to be liable" created a "potential for confusion" about who was covered by the release. Id. at 985; see also Shuttleworth, 1997 WL 349131, at * 4 (following Chakov, court considered extrinsic evidence of the parties' intent to resolve ambiguity despite fact that "the plain, literal meaning" of the release barred the claims in question). Chakov suggests that the Delaware Court would find the Matsuura-DuPont release of "any and all claims" ambiguous, and Adams and other authority indicate the Court would resolve this ambiguity in the Matsuuras' favor
 
 
 [11]
 See also 66 Am.Jur.2d Release § 30 (1973) ("A person cannot release a claim of which he has no knowledge, and of the existence of which he has been fraudulently kept in ignorance."); 66 Am.Jur.2d Release § 32 (1973) (if the plaintiff is induced to sign a broadly worded release "by the misconduct of the releasee, then the release, no matter how comprehensively worded, is binding only to the extent actually intended by the releasor")
 
 
 [12]
 DuPont cites Conley v. Dan-Webforming Int'l A/S (Ltd.), Civ. A. No. 91-401 MMS, 1992 WL 401628 (D.Del. Dec.29, 1992), in which a federal district court sitting in Delaware held that a general release barred a fraud claim. Conley, however, does not discuss the election of remedies rule for fraudulent inducement of a contract and does not hold that the release encompassed claims for fraud. Id. at * 9-10. Therefore, the court did not squarely address the defendant's argument that it should have been able to rescind the agreement based on fraud. DuPont also cites cases from other jurisdictions, in which courts rejected claims for fraudulent inducement of a settlement agreement. These cases are distinguishable because they turn on principles of law not applicable in Delaware. In Driscoll v. Schuttler, 697 F.Supp. 1195 (N.D.Ga.1988), the court rejected plaintiffs' fraudulent inducement claims because a contract is voidable under Georgia law only if there was fraud in the procurement, not the inducement, of the contract. Id. at 1201-02; see also Henslee v. Houston, 566 F.2d 475, 479 (5th Cir.1978). Delaware law provides a remedy for fraudulent inducement of a contract. See Federal Land Bank v. Pusey, No. C.A. 85L-MR4, 1986 WL 9041, at * 2 (Del.Super.1990). Gray v. Petoseed Co., Inc., 985 F.Supp. 625 (D.S.C.1996), aff'd, 129 F.3d 1259, 1997 WL 716454 (4th Cir.1997), is distinguishable because the court relied on South Carolina cases suggesting that the only remedy for fraudulent inducement of a settlement is rescission. Gray, 985 F.Supp. at 629. We have already concluded that defrauded tort plaintiffs have an election of remedies in Delaware. In Jarrell v. Petoseed Co., Inc., 331 S.C. 207, 500 S.E.2d 793 (S.C.Ct.App.1998), the court addressed a claim for civil contempt, not a fraudulent inducement claim. In Dresden v. Detroit Macomb Hosp. Corp., 218 Mich.App. 292, 553 N.W.2d 387, 390 (Mich.Ct.App.1996), the court held that a release of "any and all" causes of action arising out of the plaintiff's underlying tort barred an action for fraudulent inducement of the release. However, the court also cited two other grounds for rejecting the fraudulent inducement claim: the merger clause in the settlement agreement barred the claim and the only remedy for fraudulent inducement is rescission. Id. at 390-91. Neither of these legal principles has been adopted in Delaware. Because Michigan takes a much more restrictive approach to fraudulent inducement liability than Delaware does, Dresden is not a reliable predictor of Delaware law