PANNELL KERR FORSTER INTER-
NATIONAL ASSOCIATION LIM-
ITED, Plaintiff–Appellee,

Pannell Kerr Forster International As-
sociation B.V.; Pannell Kerr Forster
International, Limited, Plaintiffs–
counter–defendants–Appellees,

and

CPA Consulting Group, Inc., dba/PKF
Hawaii, Plaintiff,

v.

Patrick QUEK; Harrison Spiegelberg;
Defendants–Appellants

and

PKF Consulting, Inc.; PKF Invest-
ments, Defendants–counter–
claimants–Appellants.

Pannell Kerr Forster International As-
sociation B.V.; the CPA Consulting
Group, Inc. dba PKF Hawaii; Pannell
Kerr Forster International, Limited,
Plaintiffs–Appellants,

v.

PKF Consulting, Inc.; PKF Invest-
ments; Patrick Quek; Harrison Spie-
gelberg, Defendants–Appellees.

No. 99–15526, 99–16751.
D.C. No. CV–97–01077–HG.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 2000.

Decided Feb. 2, 2001.

Before HUG, Chief Judge, TROTT, and WARDLAW, Circuit Judges.

MEMORANDUM [1]

This case involves a trademark license dispute over the right to use the Pannell Kerr Forster ("PKF") name and style within the state of Hawaii. Pannell Kerr Forster International Association B.V. ("Association B.V.") and Pannell Kerr Forster International Limited ("PKFI") hold various international and U.S. trademark licenses relating to the PKF name and style. Both Pannell Kerr Forster Consulting ("PKFC") and The CPA Consulting Group, Inc. ("PKF Hawaii") are licensed by PKFI to operate under the PKF name and style. PKFC claims to be licensed to use the PKF name in Hawaii, while PKFI, Association B.V., and PKF Hawaii contend that PKFC is only licensed to use the PKF name in Alaska and the contiguous forty-eight states. As the parties are familiar with the underlying facts, they are set forth herein only as necessary to explain our decision. We have jurisdiction pursuant to 28 U.S.C. § 1292 and REVERSE and REMAND to the district court.

DISCUSSION

A grant of summary judgment is reviewed de novo. *See Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir.2000). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant

---

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

substantive law. *See Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).

## A. The District Court Improperly Determined as a Matter of Law that the Sideletter Did Not Afford PKFC the Right to Use the PKF Name and Style in Hawaii

The central issue to all claims in the instant dispute is whether PKFC is authorized to operate under the PKF name and style in Hawaii. In resolving this issue we must look to the laws of England, as the PKFC's Operating License Agreement ("OLA") provides that English law governs the interpretation of the contract. The district court correctly stated that under English law, if the words used in a contract are "clear and unambiguous, effect must be given to them because that is what the parties are taken to have agreed to by their contract." *Melanesian Mission Trust Bd. v. Australian Mut. Provident Soc.,* 2 EGLR 128, 41 EG 153 (1997). This statement, however, while partially correct, is both inapplicable to the instant case and a fatally underinclusive representation of applicable English law.

### 1. *The Language of the Contract is Not Clear and Unambiguous*

■ PKFC contends that its right to use the PKF name and style in Hawaii is derived, in part, from the language in section 2.1 of the Sideletter, which states that the OLA "shall entitle PKFC to *continue using* the [PKF name] for the purposes of the MAS Practice in the *same manner as PKFC has in the past used the [PKF name] as a Member Firm of the International Association of [PKF]* ...." (emphasis added).

PKFI and Association B.V. contend that the language in section 2.1 of the Sideletter entitling "PKFC to continue using the [PKF name] ... in the same manner as PKFC has *in the past used* the [PKF name]" was intended to grant PKFC the right to use the PKF name and style only in those states where PKFC had in the past *actively* used the PKF name. In turn, PKFI and Association B.V. contend that because PKFC did not actively use the PKF name in Hawaii as a Member Firm of the International Association of PKF, the terms of the Sideletter would not afford PKFC any rights to the PKF name in Hawaii.

PKFC's response to the above argument is twofold. First, PKFC contends that PKFI's "active use" argument is belied by the Sideletter when read as a whole. PKFC correctly notes that the language in section 2.1 of the Sideletter should be read in connection with sections 1.1 and 1.3 of the Sideletter, which provide:

1.1 PKFC pursuant to an agreement with [PKFP] ... effective *January 1, 1992 ... purchased its [MAS] Practice for the United States* ... along with the assets of the MAS Practice including going concern value of the MAS Practice ....

...

1.3 PKFC since the date of purchase has been engaged in its MAS Practice in the United States and worldwide under the names of [PKFC].... *PKFC was a signatory to a Member Firm agreement with the International Association of [PKF] dated January 1, 1992.*

Sections 1.1 and 1.3 of the Sideletter clearly establish that PKFC's rights as a Member Firm in 1992 included the right to "use" the PKF name in the entire United States. This point is undisputed. The language in section 2.1 permitting PKFC to "continue using" the PKF name as it had in the past as a Member Firm, read in conjunction with the language in sections 1.1 and 1.3, and viewed in a light most favorable to PKFC, creates a genuine is-

sue of material fact as to whether the Sideletter was intended to license PKFC to use actively the PKF name in Hawaii.

■ Alternatively, PKFC argues that even if the Sideletter did require past active use of the PKF name in Hawaii, PKFC clearly satisfied this requirement by: (1) registering as a corporation to do business in Hawaii in 1992; (2) approving of PKF Hawaii's temporary use of the PKF name; and (3) reserving its right to disapprove of PKF Hawaii's continued use of the PKF name so that PKFC could establish its own exclusive office in Hawaii. As the phrase "in the past used" is not defined by the Sideletter, we hold the foregoing argument by PKFC presents a genuine issue of material fact sufficient to preclude summary judgment.

2. *The District Court Erroneously Confined its Analysis to the Four Corners of the Contract*

■ In addition to finding the language of the Sideletter to be facially ambiguous, we reverse the district court because it did not consider in arriving at its decision the relevant "matrix of fact," as required under English law. The law of England provides that "evidence of the surrounding circumstances is admissible in all cases to place the contract in its correct setting, even where there is no ambiguity apparent on the face of the document." KIM LEWISON, THE INTERPRETATION OF CONTRACTS § 2.10, at 44 (1989). One of the leading cases in England expounding this principle is *Prenn v. Simmonds,* 1 W.L.R. 1381 (1971), in which Lord Wilberforce stated:

> The time has long since passed when agreements, even those under seal, were isolated from the matrix of facts in which they were set and interpreted purely on internal linguistic considerations.... We must ... inquire beyond the language and see what the circumstances were with reference to which the words were used, and the object appearing from those circumstances, which the person using them had in view.
>
> [E]vidence should be restricted to evidence of the factual background known to the parties at or before the date of the contract, including evidence of the 'genesis' and objectively the 'aim' of the transaction.

*Id.*

In concluding that the Sideletter did not afford PKFC the right to use the PKF name in Hawaii, the district court based its decision exclusively on the language in the contract. This constituted reversible error.

The inclusion of the integration clauses in both the OLA and the Sideletter does not justify the district court's failure to consider the relevant "matrix of fact" surrounding the Sideletter. The foregoing conclusion stems from the holding in *Don King Prods. v. Warren,* 2 Lloyd's Rep. 176 (1998), in which the English court stated:

> Clause 23.4 of the second agreement spells out that the second agreement constitutes the entire agreement between the partners with respect to the partnership and supersedes the first agreement. The effect of this clause ... is that the terms of the partnership retrospectively as from the date of the first agreement are to be found in the second agreement alone. *The first agreement is however relevant ... [because] it constitutes part of the matrix of facts against which the second agreement is to be construed.*

*Id.* (emphasis added). Accordingly, the integration clause in the instant case is insufficient to preclude the district court from considering the factual matrix in which the contract was made.

Furthermore, the district court's award of summary judgment against PKFC on Counts II through VII of the Amended Complaint and Counts I, III, and IV of PKFC's Counterclaim was premised on the court's erroneous conclusion that PKFC had no right to use the PKF name in Hawaii. Therefore, the district court's grant of summary judgment on these claims is also reversed.

## B. The District Court Improperly Dismissed PKFC's Misrepresentation Counterclaim on Summary Judgment

■ PKFC asserts that PKFI and Association B.V. induced PKFC to sign the OLA by falsely representing that PKFC would be permitted to use the PKF name in Hawaii. To resolve this claim, we must first determine whether the law of England or the law of Hawaii governs PKFC's misrepresentation claim. Section 22 of the License Agreement reflects the parties' understanding that "[t]his Agreement shall be governed by and construed in accordance with the laws of the [sic] England . . . ." While it is clear that issues of contract construction in the instant case are governed by the choice of law clause, it is less apparent whether this clause encompasses PKFC's misrepresentation claim. However, we believe it does.

First, because the original action was brought in the District Court of Hawaii, we are bound by the choice of law principles adopted by that state. *See Fuku–Bonsai, Inc. v. E.I. Du Pont de Nemours & Co.*, 187 F.3d 1031, 1033 n. 3 (9th Cir. 1999) (accepting the district court's application of Hawaii choice of law principles in determining the scope of a contract's choice of law clause).

Second, Hawaii's choice of law rules require that we apply the law of England to PKFC's misrepresentation claim. In *Fuku–Bonsai*, we adopted the district court's conclusion that where the parties had entered into an agreement that was to be "governed and construed in accordance with the laws of the State of Delaware," Hawaii's choice of law rules required that the plaintiff's claim for fraudulent inducement to contract be resolved in accordance with Delaware law. *Id.* ("Delaware law applies because Hawaii, the state where the district court sits, follows the choice of law principles in the Restatement (Second) of Conflict of Laws. Under the Restatement, the law selected by the parties in a choice of law provision governs a claim of fraudulent inducement to contract."). Accordingly, the choice of law clause in the instant case dictates that PKFC's misrepresentation claim be resolved in accordance with English law.

■ The final issue, therefore, is whether, under English law, the inclusion of the integration clause in the OLA and Sideletter forecloses PKFC's claim for misrepresentation. Section 3 of England's Misrepresentation Act of 1967, titled "Avoidance of provision excluding liability for misrepresentation," states that:

> [Where there exists a contractual term that would exclude or restrict] any liability to which a party to a contract may be subject by reason of any misrepresentation made by him before the contract was made; or . . . any remedy available to another party to the contract by reason of such a misrepresentation, that term shall be of no effect except in so far as it satisfies the requirement of reasonableness as stated in section 11(1) of the Unfair Contract Terms Act 1977; and it is for those claiming that the term satisfies that requirement to show that it does.

Misrepresentation Act, 1967, c. 7 s. 3 (Eng.). The "reasonableness" test referenced by the above act, in turn provides:

(1) In relation to a contract term, the requirement of reasonableness for the purposes of this Part of this Act, section 3 of the Misrepresentation Act 1967 and section 3 of the Misrepresentation Act (Northern Ireland) 1967 is that the term shall have been a fair and reasonable one to be included having regard to the circumstances which were, or ought reasonably to have been, known to or in the contemplation of the parties when the contract was made.

Unfair Contract Terms Act, 1977, c. 50 Pt. I s. 11 (Eng.). Therefore, the remaining issue is whether the integration clauses in the OLA and the Sideletter satisfy the foregoing "reasonableness requirement" of section 11(1) of the Unfair Contract Terms Act. Construing all factual inferences in favor of PKFC, we hold that the district court erred in concluding as a matter of law that no genuine issue of material fact existed as to whether the inclusion of the integration clause was "reasonable" given the circumstances alleged by PKFC to have been contemplated by the parties at the time the contract was formed.

## CONCLUSION

For the reasons outlined above, we REVERSE and REMAND on counts I through VII of the Amended Complaint and counts I through IV of the Counterclaim.